# 21-0095

*To Be Argued By:*
James M. Sconzo, Esq.

**IN THE**

# United States Court of Appeals

FOR THE SECOND CIRCUIT

_____

**SAIFULLAH KHAN,**
*Plaintiff-Appellant,*

v.

**YALE UNIVERSITY, PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN, JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN, LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER, SARAH DEMERS, CAROLE GOLDBERG, UNKNOWN PERSONS,**
*Defendants-Appellees,*

**JANE DOE,**
*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT, NO. 3:19-cv-01966-KAD

_____

**BRIEF OF THE DEFENDANT-APPELLEE JANE DOE**

_____

James M. Sconzo, Esq.
Brendan N. Gooley, Esq.
Carlton Fields
One State Street
Suite 1800
Hartford, CT 06103
Tel. (860) 392-5000
Fax (860) 392-5058

May 14, 2021

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................4

    A.    Plaintiff's Alleged Facts.......................................................4

        1.    Jane Reports that Plaintiff Sexually Assaulted Her .....................4

        2.    The UWC ...........................................................4

        3.    The UWC Case is Stayed Pending Criminal Proceedings............6

        4.    The UWC Proceedings Following Plaintiff's Criminal Trial .......6

    B.    Procedural History.............................................................6

        1.    Plaintiff's Complaint ....................................................6

        2.    Jane's Motion to Dismiss ................................................8

        3.    Plaintiff's Opposition to Jane's Motion to Dismiss .....................9

        4.    Jane's Reply in Further Support of Her Motion to Dismiss ........9

        5.    The District Court's Decision ........................................10

SUMMARY OF THE ARGUMENT ....................................................11

STANDARD OF REVIEW .................................................................12

ARGUMENT ................................................................................13

I.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT
    JANE IS ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY..13

A.     Plaintiff Does Not Dispute that the Connecticut Supreme Court's Test for Quasi-Judicial Immunity is Satisfied in this Case ................ 13

     1.    Connecticut Has Rejected Plaintiff's "State Actor" Argument in Favor of a Functional Approach to Quasi-Judicial Immunity that Asks What Happens in a Proceeding to Determine Whether it is Quasi-Judicial, Not Who Runs It ......................... 14

     2.    Plaintiff Concedes UWC Proceedings Meet Connecticut's Six-Factor Test for Quasi-Judicial Immunity ..................................... 18

     3.    Plaintiff's "State Actor" Argument is Meritless and has Been Rejected by Connecticut's Courts ............................................... 19

B.     Plaintiff's Focus on Cases from Other States Cannot Change the Result .................................................................................................... 21

C.     This Court Should Affirm the District Court's Judgment .................. 25

II.    CERTIFICATION IS NOT WARRANTED; CONNECTICUT HAS REJECTED PLAINTIFF'S ARGUMENT AND CERTIFICATION IS NOT PROPER TO DETERMINE WHETHER A STANDARD TEST IS SATISFIED IN A PARTICULAR FACTUAL SITUATION ..................... 25

A.     Certification is the Exception, Not the Norm ..................................... 25

B.     Certification is Not Appropriate in this Case Because Ample Precedent Exists for This Court to Make a Determination ................ 27

C.     The Application of an Established Functional Test to this Case Does Not Require Certification, Particularly When Plaintiff Does Not Contest that Jane Satisfied the Test Employed by the Connecticut Courts ................................................................................ 28

D.     Plaintiff's Analysis of the Factors Considered Regarding Certification is Misguided, Incorrect, and Incomplete ...................... 28

     1.    Jane's Constitutional Right to Federal Adjudication Weighs Strongly Against Certification .................................................... 29

ii

2.    Certification Will Result in Prejudicial Delay and Unnecessary Costs and Will Cause Additional Emotional Distress ...............29

3.    Judge Dooley's Experience with Connecticut Law Regarding Quasi-Judicial Immunity Weighs Against Certification.............30

4.    Plaintiff's Analysis of the Remaining Factors is Misguided ......31

E.    Certification is Not Warranted ............................................................33

III.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS TIME-BARRED.....................33

A.    Plaintiff Accuses the District Court of Doing Something It Did Not Do; The Court Did Not Hold That the Continuing Course of Conduct Doctrine is Inapplicable to Tortious Interference Claims ....34

B.    Even if This Court Disagrees With the District Court's Immunity Decision Or Certifies the Immunity Question, it Should Still Affirm the Dismissal of Plaintiff's Tortious Interference Claim to the Extent that Claim is Based on Conduct Before January 24, 2017 ......35

1.    Connecticut Law and This Court's Jurisprudence Regarding the Continuing Course of Conduct Doctrine Establishes that It Does Not Apply to Plaintiff's Claims ...................................................35

2.    Plaintiff's Argument for Invoking the Doctrine is Meritless......37

3.    The Continuing Course of Conduct Doctrine Does Not Apply Because Plaintiff's Claims Are Based on Discrete, Known Events Separated by Three Years ................................................40

CONCLUSION.....................................................................................................42

CERTIFICATION OF COMPLIANCE .................................................................43

## <u>TABLE OF AUTHORITIES</u>

### <u>Second Circuit Cases</u>

*Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), *certified question answered*, 133 Nev. 512, 402 P.3d 665 (2017). ....................................................8

*AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-CV-01539 JAM, 2014 WL 7270160, at *15 (D. Conn. Dec. 18, 2014), *aff'd*, 637 F. App'x 645, 646 (2d Cir. 2016) (summary order).......... 37, 41

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 156 (2d Cir. 2016)...........................27

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 626 (2d Cir. 1996).....................................................................................................21

*Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 95 (2d Cir. 2019)..... 18–19, 33

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020)........ 21, 26

*Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1117, 206 L. Ed. 2d 185 (2020)............................................................................13

*DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)...........................................26

*Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) ............................21

*Evanston Ins. Co. v. William Kramer & Assocs., LLC*, 890 F.3d 40, 50 (2d Cir. 2018), *certified question answered sub nom. Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 503 (2019) ..........................................36

*Ferreira v. City of Binghamton*, 975 F.3d 255, 291 (2d Cir.), *certified question accepted*, 35 N.Y.3d 1105, 157 N.E.3d 673 (2020) .............................................29

*Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 798 n.5 (2d Cir. 2011).......................................................................................... 25–26, 27

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 174 (2d Cir. 1984) ....................... 18, 20

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014)...26

*Goodlett v. Kalishek*, 223 F.3d 32, 38 n.4 (2d Cir. 2000)........................... 26, 27, 33

*Gross v. Rell*, 585 F.3d 72, 96 (2d Cir. 2009), *certified question answered*, 304 Conn. 234, 40 A.3d 240 (2012) ..............................................................17

*Gutierrez v. Smith*, 702 F.3d 103, 117 (2d Cir. 2012) ...................................... 27, 28

*International Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 184 (2d Cir. 2011)................................................................. 36–41

*Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467 (2d Cir. 2019).........................12

*Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ............................... 4, 39

*MacNeil v. Berryhill*, 869 F.3d 109, 117 n.5 (2d Cir. 2017) ...................................26

*Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020)...............................35

*Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 176 (2d Cir. 2019) ..........................4

*Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018) ...........13

*Ruzhinskaya v. HealthPort Techs., LLC*, 942 F.3d 69, 73 (2d Cir. 2019)..............25

*Valls v. Allstate Ins. Co.*, 919 F.3d 739, 743 (2d Cir. 2019)...................................29

*V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010)...........................................20

## Connecticut Cases

*Bonito Mfg., Inc. v. WA445 Assocs., LLC*, No. X10CV146024952, 2016 WL 1710541, at *1 (Conn. Super. Ct. Apr. 5, 2016) ..................................................30

*Brady v. Bickford*, 179 Conn. App. 776, 799, 183 A.3d 27, 42 (2018)...................34

*Chadha v. Charlotte Hungerford Hosp.*, 272 Conn. 776, 865 A.2d 1163 (2005)...16

*Coss v. Stewart*, No. CV085007541, 2010 WL 1050534, at *6 & n.1 (Conn. Super. Ct. Feb. 11, 2010), *aff'd sub nom. Coss v. Steward*, 126 Conn. App. 30, 10 A.3d 539 (2011) ......................................................................................37

*Craig v. Stafford Const., Inc.*, 271 Conn. 78, 83–84, 856 A.2d 372, 376 (2004) ........................................................................... 9, 15–21, 24

*Dlugokecki v. Vieira*, 98 Conn. App. 252, 253, 907 A.2d 1269, 1270 (2006) ........24

*Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 503, 205 A.3d 534, 540–41 (2019) ........................................................ 35, 36, 40

*Gross v. Rell*, 304 Conn. 234, 40 A.3d 240, 279 n.36 (2012) .......................... 17, 23

*Hopkins v. O'Connor*, 282 Conn. 821, 839, 925 A.2d 1030, 1042 (2007) ................................................................................. 15–16, 26

*Kelley v. Bonney*, 221 Conn. 549, 566, 606 A.2d 693, 702 (1992) ............ 16, 17, 32

*Kenneson v. Eggert*, 196 Conn. App. 773, 782, 230 A.3d 795, 801 (2020) ...........16

*Lombard v. Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 632, 749 A.2d 630, 635–36 (2000) (quoting *Clinton v. Jones*, 520 U.S. 681, 682 (1997)), *abrogated on other grounds by Ventura v. Town of E. Haven*, 330 Conn. 613, 199 A.3d 1 (2019) ......................................................................... 3, 14, 15, 19, 23

*Macdermid, Inc. v. Leonetti*, No. CV116012559, 2012 WL 3064616, at *2 (Conn. Super. Ct. June 22, 2012), *aff'd*, 310 Conn. 616, 79 A.3d 60 (2013) ........... 30–31

*Mercer v. Blanchette*, 133 Conn. App. 84, 87, 33 A.3d 889, 892 (2012) ...............25

*Morgan v. Bubar*, 115 Conn. App. 603, 613, 975 A.2d 59, 67 (2009) ...................16

*Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 80, 700 A.2d 655, 663 (1997) ...........................................................................14

*Perugini v. Guiliano*, No. CV105016077, 2012 WL 3518047, at *3 (Conn. Super. Ct. July 26, 2012) ............................................................................31

*Petyan v. Ellis*, 200 Conn. 243, 246, 510 A.2d 1337, 1338 (1986) .......................16

vi

*Preston v. Connecticut Crim. Just.*, No. CV 970572637, 1999 WL 124325, at *1 (Conn. Super. Ct. Feb. 25, 1999) .........................................................17

*Preston v. O'Rourke*, 74 Conn. App. 301, 314, 811 A.2d 753, 762 (2002)...................................................... 10, 14, 17, 18, 20, 31, 32

*Priore v. Haig*, 196 Conn. App. 675, 696, 230 A.3d 714, 731 (2020), *cert. granted* 335 Conn. 955 (2020)...............................................................16

*Rioux v. Barry*, 283 Conn. 338, 343, 927 A.2d 304, 307–08 (2007) ................................................................... 14, 15, 16, 22, 32, 38

*Rom v. Fairfield University*, No. CV020391512S, 2006 WL 390448, at *5 (Conn. Super. Ct. Jan. 30, 2006)........................................................ 10, 18, 21

*Rosato v. Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004)....................37

*Sanborn v. Greenwald*, 39 Conn. App. 289, 297, 664 A.2d 803, 808 (1995).........37

*Shikhman v. Bobcat Endoscopy, LLC*, No. X03HHDCV176087023S, 2019 WL 3781699, at *2 (Conn. Super. Ct. July 15, 2019) ......................................... 35, 40

*State v. Smith*, 280 Conn. 285, 300, 907 A.2d 73, 82 (2006) .......................... 27, 32

*Villages, LLC v. Longhi*, 166 Conn. App. 685, 701, 142 A.3d 1162, 1173 (2016)................................................................................... 14, 15

*Watts v. Chittenden*, 301 Conn. 575, 22 A.3d 1214, 1222 (2011)..........................36

*Wolinsky v. Brady*, No. MMXCV156012973, 2016 WL 2890412, at *4 (Conn. Super. Ct. Apr. 27, 2016)......................................................................37

## Additional Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).............................................................39

*Bose v. Bea*, 947 F.3d 983, 994 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1051 (2021) .......................................................................................21

*Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016) ...................................22

*Doe v. Univ. of Dayton*, 766 F. App'x 275, 290 (6th Cir. 2019)............................22

*Fogel v. Univ. of the Arts*, No. CV 18-5137, 2019 WL 1384577, at *8 (E.D. Pa. Mar. 27, 2019) .....................................................24

*Gourd v. Indian Mountain Sch., Inc.*, No. 3:18-CV-582 (JBA), 2020 WL 1244920, at *9 (D. Conn. Mar. 16, 2020).............................................37

*Jones v. Trice*, 210 Tenn. 535, 540, 360 S.W.2d 48, 51 (1962) .............................21

*L. Cohen & Co. v. Dun & Bradstreet, Inc.*, 629 F. Supp. 1419, 1423–24 (D. Conn. 1986)...........................................................30

*McKesson v. Doe*, 141 S. Ct. 48, 51 (2020)...................................................... 27, 29

*Moss v. Wyeth, Inc.*, 872 F. Supp. 2d 154, 159 (D. Conn. 2012) ............................41

*Overall v. Univ. of Pennsylvania*, 412 F.3d 492, 495 (3d Cir. 2005).............. 23, 24

*Razavi v. Sch. of the Art Inst. of Chicago*, 2018 IL App (1st) 171409, ¶ 29, 122 N.E.3d 361, 371, *case dismissed sub nom. Razavi v. Sch. of Art Inst. of Chicago*, 124 N.E.3d 475 (Ill. 2019) ........................................................ 23, 24

*Savoy v. Univ. of Akron*, 15 N.E.3d 430, 435–36 & n.3 ........................................22

*Strougo on Behalf of Brazilian Equity Fund, Inc. v. Bassini*, 1 F. Supp. 2d 268, 274 (S.D.N.Y. 1998), *vacated in part sub nom. on other grounds Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002)..................................................30

## Rules

Fed. R. Civ. P. 54(b) ................................................................11

## U.S. Code

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ................................................................ 4, 20, 23, 24

## Federal Regulations

34 C.F.R. Part 106....................................................................................................4

## Connecticut General Statutes

Conn. Gen. Stat. § 10a-55m.................................................... 4, 5, 14, 20, 24, 31, 32

Conn. Gen. Stat. § 52-196a .........................................................................................8

## Other Sources

*Biography – District Judge Kari A. Dooley*, United States District Court for
    the District of Connecticut,.......................................................................... 10, 30

*Kari Anne Dooley*, History of the Federal Judiciary, Judges, Federal Judicial
    Center ...................................................................................................................30

## <u>STATEMENT OF THE ISSUES</u>

(1)    Did the District Court correctly determine that quasi-judicial proceedings are not limited to proceedings run by "state actors" under Connecticut law?

(2)    Did the District Court properly dismiss Plaintiff's tortious interference claim pursuant to its decision that quasi-judicial proceedings are not limited to proceedings run by "state actors" under Connecticut law?

(3)    Does the continuing course of conduct doctrine apply to Plaintiff's tortious interference claim even if Jane does not have immunity for her statements?

## **STATEMENT OF THE CASE**

In 2015, Jane Doe[1] reported that Plaintiff sexually assaulted her. At the time, Jane and Plaintiff were students at Yale. Yale initiated its procedures for responding to such allegations through its University-Wide Committee on Sexual Misconduct ("the UWC"). At Plaintiff's request, however, Yale stayed those proceedings pending the conclusion of a criminal trial concerning Jane's allegations. The UWC proceedings resumed in 2018. Jane gave a statement to the UWC at that time.

In 2019, Plaintiff sued Jane for defamation based on her statement to the UWC. Plaintiff's lawsuit also included a claim that Jane tortiously interfered with Plaintiff's business relationship with Yale, based on Jane's statement to the UWC and her 2015 allegations. Because Plaintiff's claim about Jane's 2015 allegations was time-barred, Plaintiff attempted to invoke the continuing course of conduct doctrine with respect to those allegations.

The District Court dismissed Plaintiff's claims against Jane. It recognized that UWC proceedings are quintessential quasi-judicial proceedings and that Jane has absolute immunity for statements during such proceedings under Connecticut law. In so doing, the District Court rejected Plaintiff's only argument against immunity: That quasi-judicial proceedings are limited to proceedings run by "state actors" under Connecticut law. The Court further held that Plaintiff could not invoke

---

[1] "Jane Doe" is the pseudonym Plaintiff has used in this case. (*See, e.g.*, App. 5.)

the continuing course of conduct doctrine with respect to his tortious interference claim because Jane had immunity for her statement to the UWC.

Plaintiff now appeals. He claims that quasi-judicial proceedings are limited to proceedings run by "state actors." That is not correct. Under Connecticut law, "'[i]mmunities are grounded in the nature of the function performed, not the identity of the actor who performed it.'" *See Lombard v. Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 632, 749 A.2d 630, 635–36 (2000) (quoting *Clinton v. Jones*, 520 U.S. 681, 682 (1997)), *abrogated on other grounds by Ventura v. Town of E. Haven*, 330 Conn. 613, 199 A.3d 1 (2019). The Connecticut Supreme Court has therefore articulated a functional test for determining whether quasi-judicial immunity applies. That test asks what happens in a proceeding, not who runs it.

The District Court correctly applied Connecticut law. This Court should affirm the District Court's decision dismissing Plaintiff's claims against Jane.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Plaintiff's Alleged Facts.[2]

#### 1.    *Jane Reports that Plaintiff Sexually Assaulted Her.*

According to Plaintiff, on the night of October 31, 2015, Plaintiff and Jane had sexual intercourse.  (App. 17–18 (Cmplt. ¶¶ 39–43).)  Shortly thereafter, Jane reported that Plaintiff had sexually assaulted her.  (App. 18 (Cmplt. ¶ 45).)  Yale then suspended Plaintiff pending UWC proceedings.  (App. 18 (Cmplt. ¶ 47).)

#### 2.    *The UWC.*[3]

The UWC is Yale's judicial body for investigating and adjudicating sexual misconduct.  (App. 75–85 ("UWC Procedures").)  The UWC's procedures must comply with Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), and regulations promulgated thereunder.  34 C.F.R. Part 106.  The UWC's procedures must also comply with Connecticut General Statutes § 10a-55m,

---

[2] For purposes of this appeal, Jane accepts as true the well-pleaded factual allegations in Plaintiff's Complaint even though she otherwise disputes those allegations.  *See, e.g.*, *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 176 (2d Cir. 2019) (noting that Court accepts such allegations as true).

[3] Plaintiff's Complaint discusses Yale's UWC procedures and Plaintiff alleges Yale violated those procedures.  (*See, e.g.*, App. 32 (Cmplt. ¶ 107; *see also, e.g.*, App. 15 (Cmplt. ¶ 32)).)  The District Court therefore considered the UWC Procedures, which were publicly available on Yale's website.  (App. 172–74.)  This Court should do the same.  *See, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that is attached to it as an exhibit or is incorporated in it by reference.  And even if the plaintiff chooses not to attach an instrument to the complaint or to incorporate it by reference, if it is one upon which the plaintiff solely relies and which is integral to the complaint, the court may take the document into consideration in deciding the defendant's motion to dismiss." (citations and internal quotation marks omitted)).

which requires Connecticut colleges and universities to adopt and disclose certain policies concerning sexual misconduct proceedings.[4]

At the time of the underlying events, the UWC procedures required that an impartial fact-finder investigate allegations by, among other things, interviewing the complainant, respondent, and witnesses. (App. 80 (UWC Procedures at 7.3).)

After completing the investigation, the fact-finder was expected to prepare a report, which was provided to the members of a hearing panel. (App. 80 (UWC Procedures at 7.3).) The panel would then conduct a hearing to listen to arguments, question the complainant, the respondent, and, where necessary, witnesses, and evaluate the evidence. (App. 80 (UWC Procedures at 7.3 & 7.4).) The panel would apply Yale's definitions of sexual misconduct and consent and apply a preponderance of the evidence standard of proof to determine whether or not the respondent violated Yale's policies.[5] (App. 80–81 (UWC Procedures at 7.4 & 7.5).) If the panel concluded that a violation occurred, it would recommend a penalty,

---

[4] Section 10a-55m requires, among other things, that Connecticut colleges and universities "adopt and disclose" policies "including clear statements that" (1) "the investigation and any disciplinary proceedings shall be conducted by an official trained annually in issues relating to sexual assault . . . and shall use the preponderance of the evidence standard . . . . ;" (2) "both the student . . . who reports or discloses the alleged assault . . . and the student responding to such report (i) are entitled to be accompanied . . . by an advisor or support person of their choice . . . and (ii) shall have the opportunity to present evidence and witnesses on their behalf during any disciplinary proceeding;" and (3) "a standard of affirmative consent is used in determining whether consent . . . was given." Conn. Gen. Stat. §§ 10a-55m(b), (b)(6). Section 10a-55m also contains confidentiality provisions. *See* Conn. Gen. Stat. § 10a-55m(b)(6)(E).

[5] (*See, e.g.*, App. 80 (UWC Procedures at 7.4) (noting that the "panel chair will begin the hearing by explaining the . . . specific University policy or policies allegedly violated").)

which would be considered by a decision maker. (App. 81 (UWC Procedures at 7.5).) The decision maker rendered a final decision (subject to appeal) and, if appropriate, imposed a binding penalty. (App. 81 (UWC Procedures at 7.5 & 7.6); *see also* App. 82.)

### 3. The UWC Case Is Stayed Pending Criminal Proceedings.

Yale agreed to Plaintiff's request that the UWC proceedings be stayed pending the conclusion of a criminal case against him. (App. 19 (Cmplt. ¶ 51).) The criminal case went to trial and concluded in early 2018. (App. 19–20 (Cmplt. ¶¶ 52, 55).)

### 4. The UWC Proceedings Following Plaintiff's Criminal Trial.

In November 2018, the UWC held a hearing regarding Jane's allegations. (App. 24 (Cmplt. ¶ 74).) Plaintiff alleges Jane gave a statement during the UWC hearing but does not describe that statement. (App. 24 (Cmplt. ¶ 77).)

The UWC panel found Plaintiff responsible for violating Yale's sexual misconduct policies and he was expelled from Yale. (App. 26 (Cmplt. ¶¶ 80, 81).)

### B. Procedural History.

#### 1. Plaintiff's Complaint.

In December 2019, Plaintiff commenced this action against Yale, various individuals employed by Yale, and Jane. (App. 9; App. 10–12 (Cmplt. ¶¶ 3–17).)

The *only* allegations in Plaintiff's Complaint concerning purported statements and actions by Jane alleging misconduct on the night of October 31, 2015 are:

- Three allegations related to Jane's initial allegations in November 2015;[6]

- That Jane testified at Plaintiff's criminal trial (App. 19, App. 20, App. 33 (Cmplt. ¶¶ 52, 54, 114)); and

- That Jane gave an unspecified statement during the UWC hearing in November 2018 (App. 24–25 (Cmplt. ¶¶ 74, 77)).[7]

Except for Jane's involvement in the criminal trial, for which Plaintiff concedes Jane has absolute immunity, (*e.g.*, App. 148), there are *no* allegations about *any* conduct by Jane from November 2015 until November 2018.  (App. 17–34.)

Plaintiff's Complaint asserts two claims against Jane:  (1) defamation; and (2) tortious interference with business relationships (the "tortious interference claim").  (App. 32–34 (Cmplt. ¶¶ 111–121).)

---

[6] These allegations are that (1) on November 1, 2015, Jane "reported to [unidentified] friends that she had been raped," (App. 18 (Cmplt. ¶ 45); App. 33 (Cmplt. ¶ 113)), (2) in the days following October 31, 2015, "Jane Doe went public with her claim of rape," (App. 18 (Cmplt. ¶ 46)), and (3) sometime "in November 2015, [Jane] made a complaint alleging sexual assault against the [P]laintiff to [unidentified] officials at Yale," (App. 12, 18 (Cmplt. ¶¶ 16, 46).)

[7] Plaintiff's Complaint includes two additional conclusory allegations regarding Jane, neither of which alleges dates or any specific actions by Jane.  First, Plaintiff alleges that Jane "persisted in her [allegedly] false and defamatory claims in an effort to obtain the expulsion of [Plaintiff] from Yale." (App. 33 (Cmplt. ¶ 115).)  Second, Plaintiff alleges that Jane "engaged in an intentional and improper interference with [Plaintiff's] relationship, namely, the promulgation and the publication of intentionally fabricated accusations against [Plaintiff] and the pursuit of a crusade to obtain [Plaintiff's] expulsion from Yale University."  (App. 33–34 (Cmplt. ¶ 119).)

Plaintiff's defamation claim is *not* based on Jane's allegations in 2015 or any alleged statements or conduct before December 2017.[8] It is limited to Jane's alleged statement to the UWC in November 2018. That is the only purported statement by Jane after December 2017.

Plaintiff's tortious interference claim is based on Jane's alleged 2018 statement to the UWC and her 2015 allegations against Plaintiff insofar as they were directed toward Yale. (*See* App. 33–34 (Cmplt. ¶ 119 (alleging Jane "promulgat[ed] . . . intentionally false accusations against" Plaintiff); Cmplt. ¶¶ 118–121 (alleging that Jane interfered with Plaintiff's business relationship *with* Yale)).)

### 2. *Jane's Motion to Dismiss.*

Jane moved to dismiss Plaintiff's claims under Rule 12(b)(6) and Connecticut's Anti-SLAPP statute.[9]

Jane argued that UWC proceedings are quasi-judicial proceedings and that she was therefore entitled to absolute quasi-judicial immunity for statements made in those proceedings. (App. 54–61.)

Jane's Motion explained that, among other things, the Connecticut Supreme Court has (1) held that quasi-judicial hearings include "any hearing before a tribunal

---

[8] In his Memorandum of Law in Opposition to Jane's Motion to Dismiss (discussed in more detail below), Plaintiff conceded that his Complaint does "not raise defamation claims" for the initial allegations (or any alleged conduct before December 2017). (App. 143.)

[9] *See* Conn. Gen. Stat. § 52-196a; *see also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), *certified question answered*, 133 Nev. 512, 402 P.3d 665 (2017).

which performs a judicial function, ex parte or otherwise, [regardless of] whether the hearing is public or not," *Craig v. Stafford Const., Inc.*, 271 Conn. 78, 84–85, 856 A.2d 372, 376 (2004), and (2) articulated a non-exclusive six-factor test for determining whether a proceeding is quasi-judicial in nature such that absolute immunity attaches. (App. 54–55.) Jane explained that the six factors were satisfied with respect to her participation in the UWC proceedings. (App. 57–58.)

Jane also argued that Plaintiff's tortious interference claim was barred by a three-year statute of limitations. (App. 53–54.)

Jane argued, alternatively, that Connecticut's ant-SLAPP statute prevented Plaintiff's claims from proceeding. (App. 61–69.)

### 3. *Plaintiff's Opposition to Jane's Motion to Dismiss.*

Plaintiff did *not* dispute that the six-factor test was satisfied. (App. 144–47.) Instead, Plaintiff argued that the UWC was not a quasi-judicial proceeding because Yale is not a "state actor." (App. 144.)

Plaintiff also argued that the continuing course of conduct doctrine extended the statute of limitations for his tortious interference claim. (App. 143.)

### 4. *Jane's Reply in Further Support of Her Motion to Dismiss.*

In her reply, Jane cited authority from the Connecticut Supreme and Appellate Court establishing that there is no "state actor" requirement under Connecticut law.

(App. 154–56.)  Jane also argued that the continuing course of conduct doctrine did not apply to Plaintiff's tortious interference claim.  (App 158–61.)

5.     *The District Court's Decision.*

The District Court (Dooley, *J.*[10]) granted Jane's Motion.  (App. 164.)

The Court held that (1) "the UWC proceedings at issue here constitute a quasi-judicial proceeding entitling [Jane] to absolute immunity" and (2) that the remaining portion of Plaintiff's tortious interference claim was time-barred.  (App. 180–83).

With respect to immunity, the District Court agreed with Jane that the six factors for determining whether a proceeding is quasi-judicial were satisfied with respect to the UWC.  (App. 174.)  The Court rejected Plaintiff's argument that quasi-judicial proceedings are limited to proceedings run by "state actors."  (App. 180.) The Court found instructive the Connecticut Appellate Court's decision in *Preston v. O'Rourke*, 74 Conn. App. 301, 314, 811 A.2d 753, 762 (2002) and the Connecticut Superior Court's decision in *Rom v. Fairfield University*, No. CV020391512S, 2006 WL 390448, at *5 (Conn. Super. Ct. Jan. 30, 2006).  (App. 177–79.)  The Court observed that *Preston*, 74 Conn. App. at 314, rejected an argument to distinguish private arbitration from public administrative actions and that *Rom*, 2006 WL 390448, at *5, had held that a private university's disciplinary proceedings were

---

[10] Judge Dooley was a Judge of the Connecticut Superior Court before she was appointed a District Court Judge.  *Biography – District Judge Kari A. Dooley*, United States District Court for the District of Connecticut, *available at* https://www.ctd.uscourts.gov/biography-district-judge-kari-dooley.

quasi-judicial and that Plaintiff's "state actor" argument "was squarely raised and the argument advanced herein by [Plaintiff in this case] was rejected" in *Rom*. (App. 178 (citing *Rom*, 2006 WL 390448, at *5).)

The District Court then concluded that Plaintiff's tortious interference claim was time-barred. (App. 180.) In making that determination, the District Court did *not* conclude that the continuing course of conduct doctrine does not apply to tortious interference claims. (App 180.) Instead, the Court concluded that the doctrine did not apply to Plaintiff's tortious interference claim under the facts of this case because Jane had immunity for her statements to the UWC and Plaintiff had not alleged any other actionable conduct within the statute of limitations. (App. 181–82.) The Court did not reach Jane's additional arguments as to why the doctrine did not apply.

Plaintiff appealed the District Court's decision.[11] (App. 185.)

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's dismissal of Plaintiff's claims against Jane because UWC proceedings are quintessential quasi-judicial proceedings and Connecticut's Courts have rejected Plaintiff's "state actor" argument. Jane therefore has immunity for any statements she made during the UWC process.

---

[11] The District Court subsequently entered a partial final judgment with respect to Plaintiff's claims against Jane pursuant to Federal Rule of Civil Procedure 54(b). (App. 7.)

The question of whether quasi-judicial proceedings are limited to proceedings run by "state actors" does not warrant certification to the Connecticut Supreme Court. Connecticut's Courts have adopted a functional test for quasi-judicial immunity that asks what happens during a proceeding, not who runs it. Established Connecticut law requires this Court to reject Plaintiff's argument. Moreover, certification is not necessary because there is ample authority for this Court to predict that the Connecticut Supreme Court would find Yale's UWC proceedings to be quasi-judicial.

The District Court properly dismissed Plaintiff's tortious interference claim because Jane has immunity. But even if this Court concludes that Jane does not have immunity, it should still affirm the District Court's dismissal of Plaintiff's tortious interference claim to the extent that claim is based on conduct before January 24, 2017. This Court's jurisprudence and Connecticut law preclude application of the continuing course of conduct doctrine even if Jane's statements to the UWC were actionable, since the statute of limitations had run prior to the filing of this action.

The judgment of the District Court should therefore be affirmed.

## STANDARD OF REVIEW

The standard of review for all issues in this appeal is *de novo*. *See, e.g.*, *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467 (2d Cir. 2019) ("We review de novo a dismissal of a complaint for failure to state a claim upon which relief may be

granted."); *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1117, 206 L. Ed. 2d 185 (2020) ("We review *de novo* a district court's grant of a motion to dismiss, including legal conclusions concerning the court's interpretation and application of a statute of limitations."); *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018) ("We review *de novo* the district court's interpretation and application of state law." (alteration omitted)).

## **ARGUMENT**

## I.     THE DISTRICT COURT CORRECTLY CONCLUDED THAT JANE IS ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY.

The District Court correctly concluded that Jane is entitled to absolute immunity for statements made during the UWC proceedings because UWC proceedings are quasi-judicial proceedings.

### A.     Plaintiff Does Not Dispute that the Connecticut Supreme Court's Test for Quasi-Judicial Immunity is Satisfied in this Case.

Plaintiff concedes that the Connecticut Supreme Court has articulated a "standard" six-factor test for determining whether a proceeding is quasi-judicial. (Pl. Br. at 14 (referring to the test as "employ[ing] a set of standard factors").)[12] Plaintiff does not contest that the six-factor test is satisfied in this case.[13]  (Pl. Br.;

---

[12] Citations to Plaintiff's Brief ("Pl. Br.") are to the page numbers listed at the bottom of each page of Plaintiff's Brief, not the page numbers at the top of the page added by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[13] Nor does Plaintiff challenge the fact that Connecticut's public policy rationale for quasi-judicial immunity—"encouraging participation and candor in judicial and quasi-judicial proceedings,"

App. 139–51 (failing to challenge the fact that the six-factor test was satisfied).)
Plaintiff's only contention is that quasi-judicial proceedings are limited to
proceedings run by "state actors." (Pl. Br. at 8.) That contention is meritless.
Connecticut has rejected Plaintiff's "state actor" argument in favor of a functional
approach to quasi-judicial immunity that asks what happens during a proceeding to
determine whether it is quasi-judicial, not who runs the proceeding.

> 1. *Connecticut Has Rejected Plaintiff's "State Actor" Argument in Favor of a Functional Approach to Quasi-Judicial Immunity that Asks What Happens in a Proceeding to Determine Whether it is Quasi-Judicial, Not Who Runs It.*

Connecticut's Supreme and Appellate Courts have repeatedly recognized that
"'[i]mmunities are grounded in the nature of the function performed, not the identity
of the actor who performed it.'" *See Lombard*, 252 Conn. at 632 (quoting *Clinton*,
520 U.S. at 682); *see also, e.g.*, *Villages, LLC v. Longhi*, 166 Conn. App. 685, 701,
142 A.3d 1162, 1173 (2016). Both of those Courts employ "a 'functional approach'"

---

*Rioux v. Barry*, 283 Conn. 338, 343, 927 A.2d 304, 307–08 (2007)—is satisfied with respect to UWC proceedings. (Pl. Br.; App. 139–51.) That is for good reason. The public policy of Connecticut is determined first and foremost by its legislature. *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 80, 700 A.2d 655, 663 (1997) ("[W]e are persuaded that the mandate of public policy that these statutes embody . . . ."). The Connecticut General Assembly has approved of, encouraged, and regulated university sexual misconduct proceedings through Connecticut General Statutes § 10a-55m. In *Preston*, 74 Conn. App. at 314, the Connecticut Appellate Court noted that the General Assembly's approval of arbitration supported the conclusion that arbitration proceedings may be quasi-judicial. The same is true of UWC proceedings.

to determine if judicial immunity applies. *Lombard*, 252 Conn. at 631 (quoting *Clinton*, 520 U.S. at 682); *Villages, LLC*, 166 Conn. App. at 701.

The Connecticut Supreme Court has adopted a six-factor, *functional* test for determining whether absolute quasi-judicial immunity applies:

> [T]his court previously has delineated several factors that assist in determining whether a proceeding is quasi-judicial in nature. These factors include *whether the body has the power to*: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. Further, it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides.

*Craig*, 271 Conn. at 85 (emphasis added) (citations and quotation marks omitted).[14]

The principal public policy reason for immunity is "encouraging participation and candor in judicial and quasi-judicial proceedings." *Rioux v. Barry*, 283 Conn. 338, 343, 927 A.2d 304, 307–08 (2007) ("Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit."); *see also, e.g.*, *Hopkins v. O'Connor*, 282 Conn. 821, 839, 925 A.2d 1030, 1042

---

[14] Plaintiff acknowledges that these factors are the "set of standard factors" for determining whether a proceeding is quasi-judicial under Connecticut law. (Pl. Br. at 14.)

(2007) ("Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits.").

On at least four occasions, the Connecticut Supreme Court has also explained that the quasi-judicial proceedings to which "immunity attaches . . . include[] *any hearing before a tribunal* which performs a judicial function, ex parte or otherwise, *and whether the hearing is public or not*."[15]  *See Petyan v. Ellis*, 200 Conn. 243, 246, 510 A.2d 1337, 1338 (1986) (emphasis added), *superseded by statute on other grounds as stated in Chadha v. Charlotte Hungerford Hosp.*, 272 Conn. 776, 865 A.2d 1163 (2005); *see also, e.g.*, *Hopkins*, 282 Conn. at 831; *Craig*, 271 Conn. at 84–85; *Kelley v. Bonney*, 221 Conn. 549, 566, 606 A.2d 693, 702 (1992).[16]

The Connecticut Supreme Court has also liberally defined the scope of proceedings that may be quasi-judicial:  "'[J]udicial proceeding' has been defined *liberally* to *encompass much more than civil litigation or criminal trials*."  *Hopkins*, 282 Conn. at 839 (emphasis added); *see also, e.g.*, *Kenneson v. Eggert*, 196 Conn. App. 773, 782, 230 A.3d 795, 801 (2020).  Proceedings "are regarded as judicial or

---

[15] The Connecticut Supreme Court has also "consistently . . . held that absolute immunity bars defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings."  *Rioux*, 283 Conn. at 343–44.  It is undisputed that if UWC proceedings are quasi-judicial, then Jane has absolute immunity.  (*See generally, e.g.*, Pl. Br.)

[16] The Connecticut Appellate Court has also repeatedly articulated that standard.  *See, e.g.*, *Priore v. Haig*, 196 Conn. App. 675, 696, 230 A.3d 714, 731 (2020), *cert. granted* 335 Conn. 955 (2020); *Morgan v. Bubar*, 115 Conn. App. 603, 613, 975 A.2d 59, 67 (2009).

quasi-judicial" "so far as they have powers of discretion in applying the law to the facts." *Craig*, 271 Conn. at 85; *see also, e.g.*, *Kelley*, 221 Conn. at 566.

In *Gross v. Rell*, 585 F.3d 72, 96 (2d Cir. 2009), *certified question answered*, 304 Conn. 234, 40 A.3d 240 (2012), this Court certified to the Connecticut Supreme Court questions that required the Connecticut Supreme Court to analyze the applicability of quasi-judicial immunity to a private nursing home. The Connecticut Supreme Court could have easily held that quasi-judicial immunity does not apply to private entities but it did not. Instead, as Judge Dooley did in this case, it analyzed whether the nursing home was performing a judicial function to determine the applicability of quasi-judicial immunity. *Gross v. Rell*, 304 Conn. 234, 40 A.3d 240, 279 n.36 (2012).

In *Preston*, 74 Conn. App. at 303, a prosecutor was terminated after a fellow employee made a complaint about his behavior. The prosecutor challenged his termination through arbitration initiated by his union pursuant to a collective bargaining agreement.[17] *Id.* at 304. The employee who made the complaint about the prosecutor testified during the arbitration, and the prosecutor then sued her for, *inter alia*, defamation based on her testimony. *Id.* The employee asserted the defense of quasi-judicial immunity. *Id.* at 305. The prosecutor asked the Appellate

---

[17] There is no evidence that the arbitrator, Louis Pittocco, was a State employee. *See, e.g.*, *id.* Arbitrator Pittocco was one of several arbitrators proposed by the union and was then "selected . . . from the Union's list of arbitrators" by the Division of Criminal Justice. *Preston v. Connecticut Crim. Just.*, No. CV 970572637, 1999 WL 124325, at *1 (Conn. Super. Ct. Feb. 25, 1999).

Court to draw a distinction "between purely private labor arbitration and the actions of public administrative officers or bodies" for purposes of quasi-judicial immunity. *Id.* at 314. The Appellate Court declined to draw that distinction. *Id.* The Appellate Court also noted that "[o]ftentimes, '[a]rbitration is a quasi judicial proceeding.'" *Id.* at 310 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 174 (2d Cir. 1984)). The Appellate Court cited this Court's decision in *Florasynth, Inc.*, 750 F.2d at 174, for that proposition. *Florasynth, Inc.* involved private arbitration between an employee and his private employer. *Id.* at 172. In that context, this Court noted that "arbitrators act in a quasi-judicial capacity." *Id.* at 174. The Connecticut Supreme Court has since cited *Preston* in its own quasi-judicial immunity jurisprudence. *See Craig*, 271 Conn. at 86, 90 (citing *Preston*, 74 Conn. App. at 312).

And in *Rom*, 2006 WL 390448, at *5, the Connecticut Superior Court applied the Connecticut Supreme Court's functional test to conclude that "the Judicial Board at Fairfield University *is* a quasi-judicial proceeding." *Id.* (emphasis added).

### 2. *Plaintiff Concedes UWC Proceedings Meet Connecticut's Six-Factor Test for Quasi-Judicial Immunity.*

Plaintiff agrees that the Connecticut Supreme Court's six-factor functional test would be appropriate for assessing whether UWC proceedings are quasi-judicial. (Pl. Br. at 14.) Plaintiff concedes that all of the six factors in that test are satisfied in this case, and he did not contest that before the District Court. (App. 144–47.) *See, e.g.*, *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 95 (2d Cir.

18

2019) ("It is a well-established general rule that an appellate court will *not* consider an issue raised for the first time on appeal." (emphasis added) (quotation marks omitted)). Plaintiff's sole argument is that the six factors do not apply because UWC proceedings are private.

### 3. Plaintiff's "State Actor" Argument Is Meritless And Has Been Rejected By Connecticut's Courts.

Plaintiff's argument—that quasi-judicial proceedings are limited to proceedings run by "state actors"—does not find support in caselaw. (Pl. Br. at 8.)

Indeed, Plaintiff's argument for reversing the District Court's decision—that "[o]n the district court's reasoning function triumphs over form" (Pl. Br. at 8)—is meritless. Function does triumph over form under Connecticut law. *See, e.g.*, *Lombard*, 252 Conn. at 631 (quoting *Clinton*, 520 U.S. at 682) ("The determination is made using a 'functional approach.' [I]mmunities are grounded in 'the nature of the function performed, not the identity of the actor who performed it.'").[18]

No part of the six-factor test for quasi-judicial immunity asks whether the adjudicator is a "state actor." To the contrary, the test analyzes "whether the body [in question] has [certain] power[s]" rather than who oversees the body. *See, e.g.*, *Lombard*, 252 Conn. at 631–32 (quoting *Clinton*, 520 U.S. at 682); *Craig*, 271 Conn.

---

[18] As the District Court noted, Plaintiff's public-private distinction makes no sense because immunity in identical proceedings would turn on whether the proceedings occurred at a public or private school. (App. 179.) That would be at odds with Connecticut's functional approach.

at 84–85 (broadly defining the "judicial proceeding[s] to which absolute immunity attaches . . . [to] include[] any hearing before a tribunal which performs a judicial function . . . whether the hearing is public or not" and noting that proceedings are quasi-judicial "so far as they have powers of discretion in applying the law to the facts").[19]

As discussed above, the Connecticut Appellate Court rejected Plaintiff's argument in *Preston*.[20] *Preston*, 74 Conn. App. at 313–14. ("The plaintiff argues that we should draw a distinction in this case between purely private labor arbitration and the actions of public administrative officers or bodies . . . . We are not persuaded . . . .").[21]

---

[19] The UWC has discretion to apply Title IX and Conn. Gen. Stat. §10a-55m to the facts of the cases before it. UWC proceedings are "hybrid" proceedings because they are governed by those public laws. Plaintiff concedes that "hybrid" proceedings like UWC proceedings can be quasi-judicial. (Pl. Br. at 15.) *See Preston*, 74 Conn. App. at 314 (holding that "hybrid" proceeding was quasi-judicial).

[20] "This Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). There is no such evidence here. The Connecticut Supreme Court cited *Preston* favorably in its own quasi-judicial immunity jurisprudence. *See Craig*, 271 Conn. at 78 (citing *Preston*, 74 Conn. App. at 312).

[21] *Preston* also relied on law from this Court establishing that private proceedings may be quasi-judicial. *Id.* (citing *Florasynth, Inc.*, 750 F.2d at 174). *Preston*'s statement that "[o]ftentimes, '[a]rbitration is a quasi judicial proceeding'" further establishes that Connecticut law does not limit quasi-judicial proceedings to proceedings run by "state actors" because not all arbitrations are run by "state actors." *Id.* at 310 (quoting *Florasynth, Inc.*, 750 F.2d at 174). Indeed, most arbitrations are private, and even Plaintiff concedes that "strong dicta" in *Preston* suggests that arbitration "between purely private parties would be covered by quasi-judicial immunity." (Pl. Br. at 15.). If this Court agrees with Plaintiff's "state actor" argument, it will effectively abrogate *Preston*.

And the Connecticut Superior Court has held that a private university's disciplinary proceedings were quasi-judicial. *Rom*, 2006 WL 390448, at *5.[22]

Plaintiff's argument that quasi-judicial immunity is limited to proceedings run by "state actors" is meritless.

### B. Plaintiff's Focus on Cases from Other States Cannot Change The Result.

Connecticut law governs this dispute. *See, e.g.*, *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013). Connecticut law settles this matter in Jane's favor and Plaintiff's citation to the law in other states cannot change the result.

The cases Plaintiff relies on are contrary to Connecticut law.

In *Bose v. Bea*, 947 F.3d 983, 994 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1051 (2021), the Sixth Circuit applied Tennessee law, which expressly limits absolute privilege "'to legislative and judicial proceedings and other acts of state.'" *Id.* (quoting *Jones v. Trice*, 210 Tenn. 535, 540, 360 S.W.2d 48, 51 (1962)). Under Tennessee law, "a benefit to the public is [also] what drives the privilege." *Id.*

---

[22] This Court has recognized that it should give "proper regard to relevant rulings of [lower] courts of [a] State." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020); *see also, e.g.*, *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 626 (2d Cir. 1996). *Rom* is such a case. *Rom* correctly concluded that Fairfield University's Judicial Board is a quasi-judicial proceeding. *Rom* did, however, decline to apply absolute immunity even though Connecticut law is clear that absolute immunity applies to quasi-judicial proceedings. *See, e.g.*, *Craig*, 271 Conn. at 84. Plaintiff wrongly contends that "the plaintiffs [in *Rom*] did not raise the argument that quasi-judicial immunity could not apply in a private disciplinary proceeding." (Pl. Br. at 9.) "The plaintiff [in *Rom*] argue[d] that the Fairfield University judicial hearing d[id] not qualify as a quasi-judicial proceeding . . . [because] the class of absolutely privileged communications . . . is limited to legislative and judicial proceedings and acts of state." *Rom*, 2006 WL 390448, at *1. The District Court recognized that. (App. 178.)

Connecticut law is contrary on both points. *See supra*; *Rioux*, 283 Conn. at 343 (explaining that "the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings" is what drives the privilege).

Plaintiff also ignores the Sixth Circuit's decision in *Doe v. Univ. of Dayton*, 766 F. App'x 275, 290 (6th Cir. 2019), which recognized that absolute privilege applies to "statements made in the context of university disciplinary proceedings" under Ohio law. *Id.* (citing *Savoy v. Univ. of Akron*, 15 N.E.3d 430, 435–36 & n.3).

*Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016), meanwhile applied Texas law, which is contrary to Connecticut law. None of the Texas cases cited by the defendants in *Cuba* established "immunity for a statement in a 'quasi-judicial' proceeding *in a private institution that does not have any law enforcement or law interpreting authority*." *Id.* Instead, the Texas decisions were "limited to statements made in governmental administrative procedures that [bore] the trappings of adversarial litigation." *Id.* In contrast and as discussed above, Connecticut has

22

repeatedly rejected the public-private distinction that was dispositive under Texas law,[23] and Jane has cited Connecticut decisions involving private institutions.[24]

*Overall v. Univ. of Pennsylvania*, 412 F.3d 492, 495 (3d Cir. 2005), involved a defamation claim based on statements made during a Faculty Grievance Procedure. *Id.* The Third Circuit's "research reveal[ed] that under Pennsylvania law government involvement is . . . a necessary condition for according quasi-judicial status to grievance procedures." *Id.* at 497. The Court also noted that the case before it involved "an entirely private grievance procedure" in part because "[n]o state or federal statute authorized it." *Id.* at 498. That is not true here. Title IX and Conn.

---

[23] *See supra*; *see also, e.g.*, *Lombard*, 252 Conn. at 631–32 (quoting *Clinton*, 520 U.S. at 682) ("The determination is made using a 'functional approach.' [I]mmunities are grounded in 'the nature of the function performed, not the identity of the actor who performed it."). *See also, e.g.*, *Razavi v. Sch. of the Art Inst. of Chicago*, 2018 IL App (1st) 171409, ¶ 29, 122 N.E.3d 361, 371, *case dismissed sub nom. Razavi v. Sch. of Art Inst. of Chicago*, 124 N.E.3d 475 (Ill. 2019) ("Given [the School of Art Institute of Chicago's] policy, which was implemented *as required by federal law*, and Illinois precedent, as well as the Restatement (Second) of Torts, we conclude that the victims' allegedly defamatory statements to [School] authorities and agents about the claimed sexual assault and misconduct were absolutely privileged." (emphasis added)).

[24] *See, e.g.*, *Gross*, 304 Conn. at 279; *Rom*, 2006 WL 390448, at *5.

Gen. Stat. §10a-55m endorse and govern UWC proceedings, and Jane has pointed to Connecticut case law which reject the "public-private distinction."[25] [26]

In *Razavi v. Sch. of the Art Inst. of Chicago*, 2018 IL App (1st) 171409, ¶ 29, 122 N.E.3d 361, 371, *case dismissed sub nom. Razavi v. Sch. of Art Inst. of Chicago*, 124 N.E.3d 475 (Ill. 2019), the Court held that "allegations about a claimed sexual assault or misconduct made to campus security *and school authorities*, and which are published as part of an investigation into and disciplinary hearing for the alleged misbehavior, are cloaked with absolute privilege." *Id.* at ¶ 35 (emphasis added); *see also, e.g.*, *id.* at ¶¶ 24, 34, 38. Plaintiff incorrectly contends that *Razavi*'s "holding was strictly limited to the defendant's report of alleged assault to campus security"[27] (Pl. Br. at 11.)

---

[25] *See, e.g.*, *supra* Argument Part I.A and cases cited therein. It is also not clear that *Overall* is correct under current Pennsylvania law or that it applies to Title IX proceedings. *See id.* (noting that no statute authorized the proceeding). In *Fogel v. Univ. of the Arts*, No. CV 18-5137, 2019 WL 1384577, at *8 (E.D. Pa. Mar. 27, 2019), the Court concluded that Title IX proceedings are quasi-judicial under Pennsylvania law. The Court therefore dismissed defamation claims based on statements made during such proceedings. *Id.* at *10 & *10 n.102.

[26] Plaintiff also suggests that this Court should hold that UWC proceedings are not quasi-judicial because his UWC hearing allegedly did not involve the full panoply of due process rights criminal trials do. (Pl. Br. at 9 n.2.) The extent of due process protections is not one of the factors considered by the Connecticut Supreme Court in determining whether a proceeding is quasi-judicial. *See, e.g.*, *Craig*, 271 Conn. at 85 (listing factors). Connecticut's courts have held that proceedings with far less protections than UWC proceedings are quasi-judicial. *See, e.g.*, *Dlugokecki v. Vieira*, 98 Conn. App. 252, 253, 907 A.2d 1269, 1270 (2006) (noting that inland wetlands commission hearing was quasi-judicial).

[27] Plaintiff's further attempt to distinguish *Razavi* on the ground that *Razavi*'s holding was based on the fact that "federal law compelled the defendant to publish defamatory material" ignores the fact that federal law requires all universities to investigate claims such as Jane's. *See also, e.g.*, *Razavi*, 2018 IL App (1st) 171409, ¶ 35 (explaining that federal law required college to investigate

24

**C.** **This Court Should Affirm the District Court's Judgment.**

Connecticut takes a functional approach to quasi-judicial immunity. It has rejected Plaintiff's "state actor" argument. The public policy underlying the UWC proceeding is clear. Quasi-judicial immunity furthers that public policy by encouraging robust communication and testimony, without fear of a civil lawsuit. Quasi-judicial immunity benefits everyone in such a process, including the Plaintiff because the immunity protects people in Plaintiff's position from defamation and other claims. The District Court correctly rejected Plaintiff's attempt to evade Connecticut law. This Court should do the same.[28]

**II.** **CERTIFICATION IS NOT WARRANTED; CONNECTICUT HAS REJECTED PLAINTIFF'S ARGUMENT AND CERTIFICATION IS NOT PROPER TO DETERMINE WHETHER A STANDARD TEST IS SATISFIED IN A PARTICULAR FACTUAL SITUATION.**

**A.** **Certification is the Exception, Not the Norm.**

"[C]ertification is an exceptional procedure . . . ." *Ruzhinskaya v. HealthPort Techs., LLC*, 942 F.3d 69, 73 (2d Cir. 2019). This Court "resort[s] to certification 'sparingly,'" *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 798 n.5 (2d

---

allegations). Regardless, Connecticut immunity law does not turn on whether speech is compelled. *See, e.g.*, *Mercer v. Blanchette*, 133 Conn. App. 84, 87, 33 A.3d 889, 892 (2012) (statements at monitoring meeting were quasi-judicial).

[28] Immunity in this context means freedom from suit, not freedom from all consequences. All parties and witnesses "must provide truthful information in all phases of a UWC proceeding" and there are severe consequences for not doing so because "[f]ailure to provide truthful information or any attempt to impede the UWC process may result in a recommendation for a more severe penalty or a referral for discipline." (App. 77 (UWC Procedures 3).)

Cir. 2011), and has repeatedly stated that "it is our job to predict how the forum state's highest court would decide the issues before us." *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)). This Court will therefore "not certify questions of law where sufficient precedents exist for [this Court] to make" that prediction.[29] *Id.* (quoting *DiBella*, 403 F.3d at 111); *see also, e.g.*, *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 n.2 (2d Cir. 2020) (holding that certification was "not warranted . . . because 'sufficient precedents exist for us to make the [relevant] determination.'" (alteration omitted) (quoting *DiBella*, 403 F.3d at 111)); *MacNeil v. Berryhill*, 869 F.3d 109, 117 n.5 (2d Cir. 2017) ("[C]ertification is not proper where there is no split of authority on a question and sufficient precedent exists for us to make a determination." (alteration and internal quotation marks omitted)).

In *Goodlett v. Kalishek*, 223 F.3d 32, 38 n.4 (2d Cir. 2000), this Court held:

> Here, although the specific question presented by this unusual case has not been confronted by the New York courts, we are hardly writing on a blank slate; to the contrary, as the above *partial* list of New York primary-assumption of risk cases makes plain, sufficient precedents exist for us to make a prediction of how the New York Court of Appeals would decide the question before us.

This Court therefore declined to certify the issue in *Goodlett*. *Id.*

---

[29] Thus, Plaintiff's contention that the District Court was required to either deny Jane's Motion or certify this issue to the Connecticut Supreme Court is wrong. (Pl. Br. at 7.) The District Court's role was to apply Connecticut law and, if necessary, predict how the Connecticut Supreme Court would rule under the facts of this case. That is exactly what the District Court did.

Certification is also inappropriate where the questions at issue are factual and not complex. *See, e.g.*, *Gutierrez v. Smith*, 702 F.3d 103, 117 (2d Cir. 2012) ("[I]t is . . . inappropriate to certify where we believe that, although state law is uncertain, the uncertainty is manifested in cases that are profoundly factual."); *Fischer & Mandell, LLP*, 632 F.3d at 798 n.5 ("[C]ertification is not proper where the question does not present a complex issue . . . ." (internal quotation marks omitted)).

The Supreme Court of the United States recently noted that "[c]ertification is by no means 'obligatory' merely because state law is unsettled; the choice instead rests in the sound discretion of the federal court." *McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) (internal quotation marks omitted); *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 156 (2d Cir. 2016) ("Under Second Circuit precedent, the decision whether to certify is discretionary."). "Our system of cooperative judicial federalism presumes federal and state courts alike are competent to apply federal and state law." *McKesson*, 141 S. Ct. at 51 (internal quotation marks omitted).

## B. Certification is Not Appropriate in This Case Because Ample Precedent Exists for This Court to Make a Determination.

As was the case in *Goodlett*, 223 F.3d at 38, this Court is not writing on a blank slate. Far from it. As discussed above, this Court has the benefit of many decisions discussing quasi-judicial immunity. That well-developed body of law establishes that immunity is decided by a functional test and that immunity is not limited to proceedings run by "state actors." Even Plaintiff concedes that the

Connecticut Appellate Court has (1) "rejected [an] invitation to distinguish between purely private proceedings and public administrative proceedings" and (2) stated in "strong dicta" "that arbitration proceedings between purely private parties would be covered by quasi-judicial immunity." (Pl. Br. at 14–15.) This is not a complex issue. The authority, cited above, resolves all issues in Jane's favor. But even if the question were debatable, Connecticut jurisprudence would allow this Court to predict the answer.

> **C.** **The Application of an Established Functional Test to this Case Does Not Require Certification, Particularly When Plaintiff Does Not Contest that Jane Satisfied the Test Employed by the Connecticut Courts.**

A factual dispute does not warrant certification. And certification is particularly inappropriate because Plaintiff does not even contest that Jane has met every factor in the standard test. *See, e.g.*, *Gutierrez*, 702 F.3d at 117 ("[I]t is . . . inappropriate to certify where we believe that, although state law is uncertain, the uncertainty is manifested in cases that are profoundly factual."); *see also* Pl. Br. at 14 (referring to the Connecticut test as comprising "a set of standard factors").

> **D.** **Plaintiff's Analysis of the Factors Considered Regarding Certification Is Misguided, Incorrect, and Incomplete.**

In a last-ditch effort to have this Court ignore Connecticut law and certify a straightforward issue, Plaintiff discusses several factors. (Pl. Br. 13–18.) This Court should not even reach these factors because, as previously discussed, Connecticut

law is clear. If the Court nevertheless does so, it will find that Plaintiff's discussion is misguided and incomplete. Plaintiff ignores factors that weigh against certification and incorrectly analyzes factors he claims support certification.

> 1. *Jane's Constitutional Right to Federal Adjudication Weighs Strongly Against Certification.*

"[A] foreign party has a constitutionally-recognized interest in not being put back in state court through the process of certification, an interest which is entitled to significant weight in a federal court's decision whether to certify." *Valls v. Allstate Ins. Co.*, 919 F.3d 739, 743 (2d Cir. 2019); *see also, e.g.*, *Ferreira v. City of Binghamton*, 975 F.3d 255, 291 (2d Cir.), *certified question accepted*, 35 N.Y.3d 1105, 157 N.E.3d 673 (2020) (noting relevance of this issue to certification).

Jane is not a Connecticut resident. (*See, e.g.*, App. 23–24 (Cmplt. ¶ 68 (alleging that Jane had graduated from Yale by the time of the UWC hearing) ¶ 77 (alleging that Jane appeared at the underlying UWC hearing remotely to give "a prepared statement from the professional school she was then attending")).) Jane's right to adjudication by a federal court weighs significantly against certification.

> 2. *Certification Will Result in Prejudicial Delay and Unnecessary Costs and Will Cause Additional Emotional Distress.*

The delay and expense associated with certification are also relevant considerations. *See McKesson*, 141 S. Ct. at 51; *Ferreira*, 975 F.3d at 291. Certification will cause considerable delay and expense. Delay is particularly

problematic because this case stems from events that occurred at a university nearly six years ago. (*See* App. 17 (Cmplt. ¶ 39).) Further delay raises significant concerns about the availability and recollections of witnesses, including former students who have already left Yale. Delay also extends the time in which the parties must address traumatic events from long ago; additional proceedings will cause additional trauma.

      3.    *Judge Dooley's Experience with Connecticut Law Regarding Quasi-Judicial Immunity Weighs Against Certification.*

Courts within this Circuit have also considered the federal judge's familiarity with the relevant state law in determining whether certification is warranted. *See, e.g.*, *Strougo on Behalf of Brazilian Equity Fund, Inc. v. Bassini*, 1 F. Supp. 2d 268, 274 (S.D.N.Y. 1998), *vacated in part sub nom. on other grounds Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002); *L. Cohen & Co. v. Dun & Bradstreet, Inc.*, 629 F. Supp. 1419, 1423–24 (D. Conn. 1986). Judge Dooley decided at least two quasi-judicial immunity cases as a Connecticut Superior Court Judge, one of which was affirmed by the Connecticut Supreme Court.[30] *See Macdermid, Inc. v. Leonetti*, No. CV116012559, 2012 WL 3064616, at *2 (Conn. Super. Ct. June 22,

---

[30] Judge Dooley was a Connecticut Superior Court Judge from 2004 until her appointment to the Federal Bench in 2018. *Biography – District Judge Kari A. Dooley*, United States District Court for the District of Connecticut, *available at* https://www.ctd.uscourts.gov/biography-district-judge-kari-dooley; *Kari Anne Dooley*, History of the Federal Judiciary, Judges, Federal Judicial Center, *available at* https://www.fjc.gov/history/judges/dooley-kari-anne. During her tenure as a Connecticut Superior Court Judge, Judge Dooley was appointed to Connecticut's Complex Litigation Docket. *See, e.g.*, *Bonito Mfg., Inc. v. WA445 Assocs., LLC*, No. X10CV146024952, 2016 WL 1710541, at *1 (Conn. Super. Ct. Apr. 5, 2016).

2012), *aff'd*, 310 Conn. 616, 79 A.3d 60 (2013); *Perugini v. Guiliano*, No. CV105016077, 2012 WL 3518047, at *3 (Conn. Super. Ct. July 26, 2012). Judge Dooley has unique experience with the substantive law at issue and the workings of Connecticut's trial and Appellate Courts.

### 4. *Plaintiff's Analysis of the Remaining Factors is Misguided.*

Plaintiff's contention that there is no relevant law from Connecticut's Appellate Courts concerning the immunity issue in this case is incorrect. *See supra*.

In fact, immediately after contending that there is "no convincing evidence of what state law is," Plaintiff acknowledges *Preston*, 74 Conn. App. at 301, which he notes "suggests that arbitration between purely private parties would be covered by quasi-judicial immunity."[31] (Pl. Br. at 15.) Plaintiff's focus on the fact that *Preston* relied on "statutory provisions that explicitly endorse and govern arbitration proceedings by giving an arbitrator powers that a court normally possesses exclusively" also supports Jane's position. (Pl. Br. at 14.) Just as it has done with arbitration, the Connecticut General Assembly has endorsed and governed university sexual misconduct proceedings and given hearing officers powers that courts generally have. *See* Conn. Gen. Stat. § 10a-55m.

---

[31] Plaintiff argues this suggestion is "strong dicta" because *Preston* "did not resolve whether quasi-judicial immunity extends to a purely private proceeding other than arbitration," but that contention misses the point. (Pl. Br. at 15.) UWC proceedings are not purely private because they are governed by public law. *See supra* note 19 and discussion therein.

Second, Plaintiff's discussion of public policy ignores the fact that the Connecticut General Assembly and Connecticut Supreme Court have already decided the public policy at issue in this case. (Pl. Br. at 16.) The General Assembly has endorsed and regulated university sexual misconduct proceedings, which supports the extension of quasi-judicial immunity to such proceedings. *See* Conn. Gen. Stat. § 10a-55m; *Preston*, 74 Conn. App. at 314; *see also supra* note 13. Plaintiff acknowledges that, under Connecticut law, immunity serves the public purpose of "'encouraging witnesses, both complaining and testimonial, to come forward and testify.'" (Pl. Br. a 16 (quoting *Rioux*, 283 Conn. at 343).) The Connecticut Supreme Court's jurisprudence also establishes that this public policy consideration is compelling in this case. *See, e.g.*, *Kelley*, 221 Conn. at 571 (noting that "the compelling public policy concern for the protection of school age children" supported the application of immunity); *see also, e.g.*, *State v. Smith*, 280 Conn. 285, 300, 907 A.2d 73, 82 (2006) (noting that the established public policy of the State of Connecticut is to "encourag[e] reports of sexual assault."). It is not appropriate to certify this case for the Connecticut Supreme Court to make a policy determination that is clear from its prior jurisprudence.

### E. Certification Is Not Warranted.

This Court is "hardly writing on a blank slate; to the contrary, as the above *partial* list of [Connecticut quasi-judicial immunity] cases makes plain, sufficient precedents exist for [this Court] to [at least] make a prediction of how the [Connecticut Supreme Court] would decide the question before" it. *Goodlett*, 223 F.3d at 38 n.4. Plaintiff's argument for certification falls apart the moment this Court considers Connecticut law regarding quasi-judicial immunity.[32]

## III. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS TIME-BARRED.

The District Court correctly concluded that because Jane's alleged statements to the UWC are inactionable, the continuing course of conduct doctrine does not apply. The Court therefore correctly dismissed Plaintiff's tortious interference claim. Even if this Court concludes that Jane's statements to the UWC are actionable, it should still affirm the dismissal of Plaintiff's tortious interference claim insofar as that claim is based on purported conduct before January 2017.

---

[32] If the Court disagrees, Plaintiff's proposed certified question is improper. (*See* Pl. Br. 17–18.) The proper question is whether a proceeding that is not run by a state actor can ever be a quasi-judicial proceeding. That was Plaintiff's argument below. (App. 144.) Plaintiff did not challenge the fact that UWC proceedings are quasi-judicial under the Connecticut Supreme Court's established test in the trial court and cannot do so now. *See, e.g.*, *Biocad JSC*, 942 F.3d at 95.

33

### A.    Plaintiff Accuses the District Court of Doing Something It Did Not Do; The Court Did Not Hold That the Continuing Course of Conduct Doctrine Is Inapplicable to Tortious Interference Claims.

Plaintiff incorrectly contends that the District Court held "that the continuing course of conduct doctrine . . . [does] not apply to the tort of intentional interference with business relationships." (Pl. Br. at 19.) The District Court did not hold that the continuing course of conduct doctrine may never apply to such claims. (*See* App. 180–83.) Instead, the District Court correctly held that "the continuing course of conduct doctrine has no application" to this case because the only relevant conduct Plaintiff alleged inside the statute of limitations was not actionable.[33] (*See* App. 181–83.) That decision was correct. *See Brady v. Bickford*, 179 Conn. App. 776, 799, 183 A.3d 27, 42 (2018) ("[N]o actionable conduct occurred within the applicable statute of limitations, and the continuing course of conduct doctrine, therefore, cannot be applied to allow recovery for conduct outside the statute of limitations.").

---

[33] More specifically, the District Court explained that Plaintiff's "complaint includes only two sets of allegations concerning [Jane] subsequent to her 2015 sexual assault allegations." The first related to Jane's criminal trial testimony, which Plaintiff conceded could not serve as the basis of a claim. (App. 182.) The second concerned Jane's testimony during UWC proceedings, which the Court found to be not actionable. (App. 182.)

**B.    Even if This Court Disagrees with the District Court's Immunity Decision Or Certifies the Immunity Question, It Should Still Affirm the Dismissal of Plaintiff's Tortious Interference Claim to the Extent that Claim is Based on Conduct Before January 24, 2017.**

If this Court nevertheless concludes that the District Court erred when it held that Jane is entitled to absolute immunity or certifies that issue to the Connecticut Supreme Court, which this Court should *not* do, this Court should still conclude that the continuing course of conduct doctrine does not apply to this case.[34]

> *1.    Connecticut Law and This Court's Jurisprudence Regarding the Continuing Course of Conduct Doctrine Establishes that It Does Not Apply to Plaintiff's Claims.*

"[T]he continuing course of conduct doctrine recognizes that the 'act' or 'omission' that commences the limitation period *may not be discrete and attributable to a fixed point in time*." *Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 503, 205 A.3d 534, 540–41 (2019) (emphasis added).  For example, in *Shikhman v. Bobcat Endoscopy, LLC*, No. X03HHDCV176087023S, 2019 WL 3781699, at *2 (Conn. Super. Ct. July 15, 2019), the Court applied *Essex Insurance Co.*, 331 Conn. at 503, to dismiss claims of fraudulent misrepresentation:

> The continuous course of conduct doctrine does not apply here because there was no continuous course of the alleged conduct.  The plaintiff alleges that the defendants made *discrete*, *specific misrepresentations* to him in 2006, 2009, and 2012.    There are no allegations of misrepresentations after that point.    Thus, *it is entirely possible to*

---

[34] *See, e.g.*, *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) ("[W]e are free to affirm a decision dismissing a complaint on any grounds supported in the record, even if it is not one on which the trial court relied." (alteration omitted)).

"pinpoint the exact date of a particular negligent act or omission that caused injury."

(Emphasis added).[35]  For the continuing course of conduct doctrine to apply, the "plaintiff must establish [among other things] that the defendant . . . *continually* breached [a] duty." *Essex Ins. Co.*, 331 Conn. at 504 (emphasis added).

In *International Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 184 (2d Cir. 2011), this Court applied Connecticut law concerning the continuing course of conduct doctrine to conclude that the plaintiff had "not plausibly alleged that tolling [was] warranted" because a "single-page, handwritten fax sent twenty months after any other alleged misrepresentation by [the defendant] does not plausibly link up to form a continuous course of conduct." *Id.* (quotation marks omitted).  The fact that the fax was related to prior improper conduct did not change the fact that there was no *continuous* conduct.  *Id.*  This Court also noted that the fax "was not unprompted." *Id.* at 185.  The defendant had sent it in response to an inquiry from the plaintiff.  *Id.* That also rendered the continuing course of conduct doctrine inapplicable because "[a] plaintiff does not have a unilateral option to extend the repose period of its

---

[35] *See also, e.g.*, *Evanston Ins. Co. v. William Kramer & Assocs., LLC*, 890 F.3d 40, 50 (2d Cir. 2018), *certified question answered sub nom. Essex Ins. Co.*, 331 Conn. at 493 ("[F]or a series of subsequent wrongful omissions to trigger the continuing course of conduct doctrine, the series *must be more than a collection of* '*repeated events giving rise to discrete injuries* . . .  In such a case the damages from each discrete act would be readily calculable without waiting for the entire series of acts to end.  There would be no excuse for delay.  And so the violation would not be deemed "continuing."'" (emphasis added) (alterations omitted) (quoting *Watts v. Chittenden*, 301 Conn. 575, 22 A.3d 1214, 1222 (2011)).

claims merely by making an inquiry that can be expected to elicit a reply." *Id.* (citing *Sanborn v. Greenwald*, 39 Conn. App. 289, 297, 664 A.2d 803, 808 (1995)).

Finally, "both the [Connecticut] Appellate Court and the [United States District Court for the District of Connecticut] agree that 'the continuing course of conduct doctrine has no application after the party has discovered the harm.'"[36] *Wolinsky v. Brady*, No. MMXCV156012973, 2016 WL 2890412, at *4 (Conn. Super. Ct. Apr. 27, 2016) (citing *Rosato v. Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004));[37] *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-CV-01539 JAM, 2014 WL 7270160, at *15 (D. Conn. Dec. 18, 2014), *aff'd*, 637 F. App'x 645, 646 (2d Cir. 2016) (summary order) (affirming decision that claims were time-barred); *Gourd v. Indian Mountain Sch., Inc.*, No. 3:18-CV-582 (JBA), 2020 WL 1244920, at *9 (D. Conn. Mar. 16, 2020).

> 2. *Plaintiff's Argument for Invoking the Doctrine is Meritless.*

Plaintiff's contention in his Brief that he alleged "years of persistent false testimony" is contradicted by his own Complaint. (Pl. Br. at 21.)  Plaintiff does not

---

[36] Similarly, "the continuing course of conduct doctrine may not be invoked merely because plaintiff has yet to discover the full scope of harm."  *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-CV-01539 JAM, 2014 WL 7270160, at *15 (D. Conn. Dec. 18, 2014), *aff'd*, 637 F. App'x 645, 646 (2d Cir. 2016) (summary order).

[37] *Rosato* concerned an action subject to the statute of limitations in Connecticut General Statutes § 52-584.  *Rosato*, 82 Conn. App. at 404.  Connecticut State and Federal Courts have, however, applied *Rosato*'s holding to actions that, like the present one, are governed by Connecticut General Statutes § 52-577 and other statutes of limitations.  *See, e.g.*, *Coss v. Stewart*, No. CV085007541, 2010 WL 1050534, at *6 & n.1 (Conn. Super. Ct. Feb. 11, 2010), *aff'd sub nom. Coss v. Steward*, 126 Conn. App. 30, 10 A.3d 539 (2011) and cases cited above.

allege continuous conduct or anything close to it. He alleges Jane made allegations in November 2015 and that Jane gave a statement to the UWC in November 2018. (*See, e.g.*, App. 12–33 (Cmplt. ¶¶ 16, 45, 46, 74, 77, 113); *see also, e.g.*, App. 182.) Plaintiff alleges no conduct by Jane between those dates except for Jane's criminal trial testimony, which is not part of Plaintiff's claim nor could it be.[38] (*See* App. 148 (conceding Plaintiff does not assert claims against Jane for her criminal trial testimony); *Rioux*, 283 Conn. at 343 (discussing absolute judicial immunity).

Plaintiff's "two [alleged] acts" by Jane (an allegedly false report in November 2015 and Jane's testimony to the UWC in November 2018) are insufficient to invoke the doctrine under this Court's binding precedent applying Connecticut law. *International Strategies Grp., Ltd.*, 645 F.3d at 184 (holding that the plaintiff had "not plausibly alleged that tolling [was] warranted" because a "single-page, handwritten fax sent twenty months after any other alleged misrepresentation by [the defendant] does not plausibly link up to form a continuous course of conduct").

In fact, Plaintiff alleges that in November 2015, Yale stayed the UWC case and that nothing occurred with respect to the UWC case until years later. (App. 19–20 (Cmplt. ¶¶ 51, 57 ("[T]hroughout the 2017/2018 academic year, [Yale] took no

---

[38] Even if that were not the case, the Complaint's allegation concerning Jane's testimony at Plaintiff's criminal trial still could not support Plaintiff's tortious interference claim. Plaintiff's tortious interference claim asserts that Jane interfered with Plaintiff's alleged business relationship *with Yale*. (*See, e.g.*, App. 33 (Cmplt. ¶ 118).) It is Jane's alleged interactions *with Yale* that are at issue in Plaintiff's tortious interference claim, not any alleged conduct outside of Yale.

steps to bring to a closure the stayed UWC disciplinary procedure")).)  Plaintiff has not just failed to plead a continuous course of conduct; he has affirmatively pleaded that there was no continuous course of conduct.

Plaintiff's conclusory allegation that Jane "persisted" in her allegations and engaged in a "crusade" to obtain Plaintiff's expulsion do not cure this deficiency. (App. 33–34 (Cmplt. ¶¶ 115 & 119).)  Those allegations are not factual allegations. They are conclusory characterizations of what Plaintiff believes Jane's alleged actions amounted to.  They add nothing to Plaintiff's Complaint and are not entitled to be assumed to be true.  *See, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("[A]llegations that are 'conclusory' are 'not entitled to be assumed true . . . .'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)); *see also, e.g.*, *International Strategies Grp., Ltd.*, 645 F.3d at 184 (holding that "[c]onclusory allegations . . . about" an entity related to the defendant were insufficient to invoke the continuing course of conduct doctrine and looking instead only to the specific misrepresentations alleged to determine whether the allegations were sufficient).[39]

---

[39] Even if the Court accepted Plaintiff's conclusory characterizations of a "crusade" and persistence as allegations of fact, nothing changes.  Plaintiff still has alleged nothing more than two discrete sets of actions separated by years of inaction, which is not continuous conduct.  (*See* App. 19–20 (Cmplt. ¶¶ 51, 57 (alleging there was a stay and that nothing occurred with respect to Jane's allegations before the end of the 2017/2018 school year).)

3.     *The Continuing Course of Conduct Doctrine Does Not Apply Because Plaintiff's Claims Are Based on Discrete, Known Events Separated by Three Years.*

The continuing course of conduct is inapplicable to Plaintiff's claim even if Jane's purported statements to the UWC are actionable. Plaintiff's tortious interference claim is based on "the promulgation . . . of [allegedly] intentionally fabricated accusations against" Plaintiff in November 2015. (App. 18, 33–34 (Cmplt. ¶¶ 46, 119).) Plaintiff's claim therefore originates from a discrete point in time, which renders the doctrine inapplicable. *See, e.g.*, *Essex Ins. Co.*, 331 Conn. at 503. Indeed, Plaintiff's claim is entirely based on several discrete alleged misrepresentations that purportedly occurred on specific dates. (*See* App. 18 (Cmplt. ¶¶ 45–48).) As in *Shikhman*, 2019 WL 3781699, at *2, "it is entirely possible to pinpoint the exact date of [the first and later] particular act[s]." With one exception, the purported misrepresentations allegedly occurred in November 2015. The exception is Jane's statement to the UWC three years later, in November 2018. (App. 24–25 (Cmplt. ¶ 77).) That three-year gap is significantly longer than the twenty-month gap this Court held was too long in *International Strategies Group*. Moreover, Plaintiff alleges that he "persuaded" Yale "to stay" the UWC proceedings "pending the results of his criminal trial," (App. 19 (Cmplt. ¶ 51)), and, therefore, the rule that a "plaintiff does not have a unilateral option to extend" the statute of limitations also bars the continuing course of conduct doctrine. *See International*

40

*Strategies Grp., Ltd.*, 645 F.3d at 185. Finally, Plaintiff was aware of Jane's allegations when they were made in 2015, (*See, e.g.*, App. 18 (Cmplt. ¶ 47)), and the continuing course of conduct doctrine is inapplicable for that reason as well. *See, e.g.*, *AT Engine Controls Ltd.*, 2014 WL 7270160, at *15.

The continuing course of conduct doctrine does not apply. That is true regardless of this Court's ruling on quasi-judicial immunity. Thus, even if this Court concludes that Jane does not have immunity, any tortious interference claim based on conduct prior to January 24, 2017 is time-barred.[40] (App. 161 n.14; *see also, e.g.*, *Moss v. Wyeth, Inc.*, 872 F. Supp. 2d 154, 159 (D. Conn. 2012).)

---

[40] Plaintiff does not challenge the District Court's determination that January 24, 2017 is the appropriate date with respect to the statute of limitations. (*See* Pl. Br. 18–21.)

## <u>CONCLUSION</u>

Connecticut law is clear. Quasi-judicial proceedings are determined by the function the tribunal performs, not the identity of the person presiding.

This Court should affirm the judgment of the District Court.

Dated: May 14, 2021

Respectfully submitted,

By: /s/ *James M. Sconzo*
James M. Sconzo, Esq.
Brendan N. Gooley, Esq.
CARLTON FIELDS P.A.P.C.
One State Street
Suite 1800
Hartford, CT 06103
Tel:(860) 392-5000
Fax:(860) 392-5058
E-mail: jsconzo@carltonfields.com
            bgooley@carltonfields.com

*Attorneys for Defendant-Appellee Jane Doe*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify pursuant to Fed. R. App. P. 32(a) that the attached Brief is proportionally spaced, has a typeface (Times New Roman) of 14 points, and contains 10,762 words (excluding, as permitted by Fed. R. App. P. 32(f), the Table of Contents, Table of Authorities, and Certificate of Compliance), as counted by the Microsoft Word processing system used to produce this Brief.

Dated: May 14, 2021

/s/ *James M. Sconzo*
James M. Sconzo

## **CERTIFICATION OF SERVICE**

This is to certify that on this 14th day of May, 2021, a true and correct copy of the foregoing Brief was electronically served through the Court's CM/ECF system and via U.S. Mail, postage paid, upon the following party:

Norman A. Pattis, Esq.
The Pattis & Smith Law Firm
383 Orange Street, 1st Floor
New Haven, Connecticut 06511
*Counsel for Plaintiff-Appellant*

/s/ *James M. Sconzo*
James M. Sconzo

44