UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| Saifullah Khan, | : | |
|     Appellant, | : | |
| v. | : | 21-cv-95 |
| Yale University, et al., | : | |
|     Appellees | : | JULY 14, 2023 |

### APPELLANT'S LETTER BRIEF ON APPLICABILITY OF THE CONNECTICUT SUPREME COURT'S DECISION IN KHAN V. YALE UNIVERSITY TO THIS APPEAL

By way on an order dated June 27, 2023, this Court ordered a supplemental letter brief of no more than 10 pages on how the underlying appeal should be decided in light of the Connecticut Supreme Court's decision on questions certified to it by this Court. *Khan v. Yale University*, 347 Conn. 1 (2023), 2023 Conn. LEXIS 139**. Herewith the appellant's, Saifullah Khan's, compliance.

The simple answer is that the District Court's order dismissing the action against Jane Doe should be vacated, and the case remanded to the District Court for further proceedings.

Here's why:

The underlying proceedings are a long and winding road. This appeal is but a milestone. Prompt adjudication of the merits of the entire case is of vital importance to Mr. Khan, who lacks Yale's institutional resources.

1

Mr. Khan was charged with sexual assault after a Halloween night sexual encounter with a Yale classmate, Jane Doe, in 2015. Ms. Doe claimed rape; Mr. Khan contended consent. Before an investigation of any kind, Mr. Khan was promptly ordered off campus by Yale officials and effectively expelled, but, significantly, his disciplinary proceedings in the University's Title IX process were stayed pending the disposition of criminal charges lodged by the State of Connecticut incident to the accusations. After acquittal on all charges in a state court proceeding in 2017, he returned to Yale, where he faced a less than welcoming reception. The stay was lifted on the administrative disciplinary proceedings in 2018. Mr. Khan attended the hearings and was expelled.

Thereafter, he filed suit in the District Court against the University, Jane Doe and a series of Yale administrators and faculty members. He raised due process claims arising under Title IX as to Yale and its administrators and faculty members. He sued Jane Doe for defamation and for tortious interference with his contractual relationship with Yale. He did not sue Jane Doe for any of the comments she made in the criminal proceedings but did sue for comments she made to Yale administrators, both before and during the administrative hearings. *Khan*, \*\*12-17.

Jane Doe's lawyer moved to dismiss the action against her on the grounds of a quasi-judicial privilege. The District Court granted the motion, holding that the

Yale administrative proceedings involving Mr. Khan were quasi-judicial in character and that Ms. Doe was therefore entitled to absolute immunity, *Khan v. Yale University,* 511 F.Supp.3d 213, 226 (D.Conn. 2021). Mr. Khan appealed to this Court contending that Yale's administrative proceedings did not constitute a quasi-judicial proceeding as a matter of law and that the District Court erred in so holding. Because the issue was one of first impression in Connecticut, this Court certified a series of questions to the Connecticut Supreme Court as a matter of comity. *Khan v. Yale University*, 27 F. 4th 805 (2d Cir. 2022). The Connecticut Supreme Court has ruled, in a 7-0 decision, that Yale's administrative proceedings lack the formal indicia of reliability associated with judicial proceedings, and, therefore, Jane Doe was not, as a matter of law at the motion to dismiss stage, entitled to the benefit of an absolute privilege. *Khan v. Yale University*, 347 Conn. 1 (2023), 2023 Conn. LEXIS 139\*\*. Significantly, the Supreme Court took pains to note that the matter might be resolved in Jane Doe's favor at the summary judgment phase.

The Court certified four questions, with subparts. The questions were as follows: "(1) What requirements must be satisfied for a proceeding to be recognized as quasi-judicial for purposes of affording absolute immunity to proceeding participants? … (2) Was the 2018 Yale UWC proceeding at issue in the appeal properly recognized as quasi-judicial? (3) If the answer to the second

3

question is yes, would Connecticut extend absolute quasi-judicial immunity to Doe for her statements in the Yale UWC proceeding? (4) If the answer to the second question is no, would Connecticut afford Doe qualified immunity or no immunity at all?" See, *Khan v. Yale University*, 27 F.4th 805, 833-34 (2d Cir. 2022).

The Connecticut Court held that "a quasi-judicial proceeding is an adjudicatory one, in which the proceeding is specifically authorized by law, the entity conducting the proceeding applies the law to the facts in a framework that contains procedural safeguards, and there is a sound public-policy justification for affording proceeding participants absolute immunity." *Khan,* \*\*76.

After this Court certified questions to the Connecticut Supreme Court, but shortly before the Connecticut Supreme Court answered those questions, the Connecticut Supreme Court issued a decision in the case of *Priore v. Haig*, 344 Conn. 636 (2022), a case focusing on the lack of procedural guards of reliability as the fulcrum distinguishing quasi-judicial proceedings from lesser forms of process. ("[O]ur case law also looks to the procedural safeguards that attend to the proceeding… which promote reliability and due process, as part of the analysis to determine whether a proceeding is truly quasi-judicial in nature." *Priore* at 344 Conn. 648-649. The parties before the Supreme Court wrote supplemental briefs in that case at the Court's request, with Mr. Khan urging the Court to apply the

4

holding in *Prior*e to the facts in this case and to rule that Yale's UWC process lacked sufficient formality to warrant quasi-judicial immunity.

The Supreme Court sided with Mr. Khan.

The Connecticut held that the Yale proceeding was not quasi-judicial because it lacked "adequate procedural safeguards." "[T]he UWC proceeding cannot be properly recognized as quasi-judicial because it lacked the adequate procedural safeguards necessary for absolute immunity to apply." *Khan*, *36. These safeguards included the right to have counsel cross examine or otherwise participate in the proceedings, the right to have a record of the proceedings kept, the right to call witnesses, and the requirement that witnesses testify under oath.[1] *Khan*, *39. Accordingly, the Court did not answer the third question.

Finally, the Connecticut Court held that a "qualified privilege is available to alleged victims of sexual who report their abuse to proper authorities, but, at this stage of the proceedings, the allegations of malice in Khan's complaint are

---

[1] The Supreme Court noted that the claim that the university's student honor code was a sufficient substitute for an oath was inapt because, by the time the hearing took place, Ms. Doe was no longer a student. *Khan*, *39. Mr. Khan could well have sued Ms. Doe using her real name, as he was found not guilty at his criminal trial and any state law barring mention of her name evaporated at the point of his acquittal, and, to the extent that UWC proceedings require the use of a pseudonym, Ms. Doe was no longer a student. Mr. Khan's effort at gallantry may well have been misplaced. The issue of a pseudonym will require revisiting below.

5

sufficient to defeat Doe's entitlement to qualified immunity as a matter of law." *Khan, \*76*.

The Connecticut Court took pains to note the procedural posture of the case: The was an appeal taken from a ruling to dismiss a claim under Federal Rules of Procedure 12(b)(6). As such, the well-pled allegations of the Complaint were accepted as true for purposes of the motion. The parties did not challenge whether malice was sufficiently pleaded, although the Connecticut Supreme Court suggests that it was. *Khan*, \*56 "In this case, Khan alleged in his complaint that Doe made false allegations for the sake of trying to expel Khan as part of a larger political movement and personal vendetta…. Khan further alleged that, at first, she told a campus health care worker that she had engaged in consensual unprotected sex. Khan contends that Doe [later] reported rape to her friends and, ultimately, to the title IX coordinator only because she was ashamed of her sexual advances and encouraged by the larger political movement waged against *Khan*," \*56.

Under Connecticut law, malice is any improper or unjustified motive. In this case, the Connecticut Supreme Court noted that the pleadings reflect more than sufficient evidence of potential malice in the form of the over-heated "MeToo" sensibility that, for a time, overcame the more sober application of due process and fundamental fairness customarily afforded both accusers and the accused. *Khan,*

6

*56*. Mr. Khan can easily meet the requisite showing for malice at the appropriate time; he has pleaded sufficient facts to warrant that the case advance to discovery.

Only Jane Doe filed a motion to dismiss, claiming immunity; Yale did not join the briefing, presumably because it did not want to invite consideration of the case on a playing field tilted in Mr. Khan's direction. No doubt, the allegations of malice against Ms. Doe, which must be proved to defeat her claim for qualified immunity, will be tested at the summary judgment phase of the litigation. "A more complete factual record, however, may warrant revisiting Doe's qualified privilege at the summary judgment stage or when submitting the matter to a jury." *Khan*, *56-57. That stage of the litigation has yet to be reached.

The law is now clear, and provides adequate notice to the parties, and to the District Court, about what standards must be met for the litigation to advance to trial.

Mr. Khan believes that this Court should, armed with the opinion of the Connecticut Supreme Court settling issues of first impression in Connecticut, vacate the judgment of in favor of Ms. Doe, and send the case back to the District Court for further proceedings.

Respectfully Submitted,

/s/ Norman A. Pattis /s/

Norman A. Pattis, Esq.

PATTIS & SMITH, LLC

383 Orange Street, 1st Fl.

New Haven, CT 06511

T: (203) 393-3017

F: (203) 393-9745

npattis@pattisandsmith.com

Attorney for Plaintiff-Appellant

# **CERTIFICATE OF COMPLIANCE**
# **WITH TYPE-VOLUME LIMITATION**

I hereby certify that:

1. This brief complies with the type-volume limitation of Local R. 32.1 because it is fewer than 10-pages in length, as required by this Court's order asking for a letter brief.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32 and the typestyle requirements of Fed. R. App. P. 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

Dated: July 14, 2023

By /s/ Norman A. Pattis/s/

Norman A. Pattis