21-95
*Khan v. Yale Univ.*

# In the
# United States Court of Appeals
# for the Second Circuit

————————

AUGUST TERM 2021
No. 21-95-cv

SAIFULLAH KHAN,
*Plaintiff-Appellant,*

v.

YALE UNIVERSITY, PETER SALOVEY, JONATHON HALLOWAY, MARVIN
CHUN, JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN,
LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER, SARAH DEMERS,
CAROLE GOLDBERG, UNKNOWN PERSONS,
*Defendants,*
&
JANE DOE,
*Defendant-Appellee.*[*]

————————

On Appeal from the United States District Court
for the District of Connecticut

————————

ARGUED: OCTOBER 29, 2021
DECIDED: OCTOBER 25, 2023

————————

————————

[*] The Clerk of Court is respectfully directed to amend the official caption
as set forth above.

Before: LIVINGSTON, *Chief Judge*, KEARSE, and RAGGI, *Circuit Judges*.

_____

Plaintiff appeals from a partial final judgment of the United States District Court for the District of Connecticut (Dooley, *J.*) dismissing his Connecticut state law claims for defamation and tortious interference with contract against defendant, who accused plaintiff of sexual assault in 2015 while the two were students at Yale University. Plaintiff argues that the district court erred in finding (1) defendant to enjoy absolute quasi-judicial immunity for statements made at the 2018 Yale disciplinary hearing that resulted in plaintiff's expulsion from the university, and (2) plaintiff's tortious interference claims based on defendant's original 2015 accusations to be untimely. On preliminary review, this court was unable to determine whether Connecticut would recognize the Yale disciplinary hearing at issue as a quasi-judicial proceeding supporting absolute immunity in this case. Accordingly, we certified questions pertinent to that determination to the Connecticut Supreme Court. *See Khan v. Yale Univ.*, 27 F.4th 805, 833–34 (2d Cir. 2022). That court has now responded that absolute immunity does *not* apply in this case because Yale's disciplinary hearing was not a quasi-judicial proceeding in that it lacked procedural safeguards—*e.g.,* an oath requirement, cross-examination, the ability to call witnesses, meaningful assistance of counsel, an adequate record for appeal—associated with judicial proceedings. *See Khan v. Yale Univ.*, 347 Conn. 1, 295 A.3d 855 (2023). While the Connecticut Supreme Court recognized the possibility for participants in such a hearing to be shielded by qualified immunity, the Court concluded that defendant is not presently entitled to dismissal on that ground because plaintiff's complaint sufficiently pleads the malice necessary to defeat such immunity. With this guidance as to Connecticut law, we conclude on

this appeal that plaintiff's complaint should not have been dismissed against defendant except as to his tortious interference claim based on 2015 statements, which is untimely.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

———————

CAMERON LEE ATKINSON (Norman A. Pattis, *on the brief*), The Pattis Law Firm, LLC, New Haven, CT, *for Plaintiff-Appellant*.

JAMES M. SCONZO (Brendan N. Gooley, *on the brief*), Carlton Fields, P.A., Hartford, CT, *for Defendant-Appellee*.

———————

REENA RAGGI, *Circuit Judge*:

Plaintiff Saifullah Khan, formerly a student at Yale University, sues Yale, various of its named employees, and former Yale student "Jane Doe" under federal and state law for injuries sustained as a result of actions taken by Yale—including suspension and, eventually, expulsion—after Doe accused Khan of on-campus rape in 2015.[1]  Khan now appeals from a February 9, 2021 partial final judgment of the United States District Court for the District of Connecticut (Kari A. Dooley, *Judge*), which dismissed his Connecticut state law claims against Doe for defamation and tortious interference with his education contract with Yale.  Khan's dismissed claims are based on Doe's initial 2015 rape accusations and on her 2018

—————————

[1] While Doe's real name is known to the parties, for reasons stated earlier by this panel, we refer to her pseudonymously in this opinion.  *See Khan v. Yale Univ.*, 27 F.4th 805, 809 n.1 (2d Cir. 2022).

repetition of those accusations at a Yale disciplinary hearing conducted by five members of Yale's University-Wide Committee on Sexual Misconduct ("UWC").[2] The district court concluded that absolute immunity shields Doe from liability based on her 2018 statements because Yale's UWC hearing was a quasi-judicial proceeding. *See Khan v. Yale Univ.*, 511 F. Supp. 3d 213, 219–26 (D. Conn. 2021). It concluded that claims based on Doe's 2015 statements are untimely. *See id.* at 226–28. Khan argues that the district court erred (1) in affording Doe absolute immunity for statements made in a non-governmental proceeding, and (2) in failing to recognize that his tortious interference claim stated a timely continuing violation.[3]

On initial review, this court determined that both Khan's challenges depend on whether Doe was correctly afforded absolute judicial immunity for her 2018 statements at the Yale UWC hearing. *See Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022). The answer to that question turns on Connecticut law, which we found not to speak clearly on the matter. *See id.* at 818–28. Accordingly, we certified

---

[2] *See Khan v. Yale Univ.*, 27 F.4th at 814–16 (discussing Yale's Sexual Misconduct Policy).

[3] Khan does not—and cannot—argue that the continuing course of conduct doctrine permits him to sue Doe for defamation based on her 2015 statements. *See* Mem. of Law in Opp'n to Jane Doe Def.'s Mot. to Dismiss 5 (disavowing such argument), *Khan v. Yale Univ.*, No. 19-cv-1966 (D. Conn. June 2, 2020), Dkt. No. 31; *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 224, 837 A.2d 759 (2004) (ruling that statute of limitations for defamation claim begins on "date of publication" and "new cause of action arises with each publication"); *Watson v. Wheeler Clinic, Inc.*, No. 21-cv-503, 2022 WL 2916825, at *13 (D. Conn. July 25, 2022) ("Because each alleged defamatory statement constitutes a separate cause of action, Connecticut courts have declined to apply the continuing course of conduct doctrine to defamation claims." (brackets and citation omitted)).

4

pertinent questions to the Connecticut Supreme Court. *See id.* at 833–34.[4]

---

[4] Our certified questions asked as follows:

1. Under Connecticut law, can a proceeding before a non-government entity ever be deemed quasi-judicial for purposes of affording absolute immunity to proceeding participants?

2. If the answer to the first question is "yes," what requirements must be satisfied for a non-government proceeding to be recognized as quasi-judicial? Specifically,

   a. Must an entity apply controlling law, and not simply its own rules, to facts at issue in the proceeding? *See Petyan v. Ellis,* 200 Conn. [243,] 246, 510 A.2d 1337 [(1986)]; *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on Law of Torts § 114, at 818–19 (5th ed. 1984).

   b. How, if at all, do the "power" factors enumerated in *Kelley v. Bonney,* 221 Conn. [549], 567, 606 A.2d 693 [(1992)], and *Craig v. Stafford Construction, Inc.,* 271 Conn. [78], 85, 856 A.2d 372 [(2004)], apply to the identification of a non-government entity as quasi-judicial; and, if they do apply, are these factors "in addition" to, *id.*, or independent of, a preliminary law-to-fact requirement?

   c. How, if at all, does public policy inform the identification of a non-government entity as quasi-judicial and, if it does, is this consideration in addition to, or independent of, a law-to-fact requirement and the enumerated *Kelley/Craig* factors?

   d. How, if at all, do procedures usually associated with traditional judicial proceedings—such as notice and the opportunity to be heard; the ability to be physically present throughout a proceeding; an oath requirement; the ability to call, examine, confront, and cross-examine witnesses; the ability to be represented by counsel—inform the identification of a proceeding as quasi-judicial? *See Craig v.*

5

Accepting certification, the Connecticut Supreme Court has now responded to our queries. *See Khan v. Yale Univ.*, 347 Conn. 1, 295 A.3d 855 (2023). In a carefully reasoned and thorough opinion, the Connecticut Supreme Court unanimously ruled that the Yale UWC hearing at issue is not a quasi-judicial proceeding because it lacked a significant number of procedural safeguards—*e.g.,* an oath requirement, cross-examination, the ability to call witnesses, meaningful assistance of counsel, an adequate record for appeal— that in judicial proceedings ensure reliability and promote fundamental fairness. *See id.* at 36–48. Thus, the Court held that absolute quasi-judicial immunity does not shield Doe in this action. *See id.* at 48. While the Court recognized the possibility of qualified immunity for participants in the sort of hearing here at issue, it concluded that Doe is not presently entitled to dismissal on that ground because Khan's complaint sufficiently pleads the malice necessary to defeat qualified immunity. *See id.* at 48–57.

With the benefit of this clarification of Connecticut law, we can now resolve this appeal. Because Doe's 2018 statements are not

---

*Stafford Const., Inc.*, 271 Conn. at 87–88, 856 A.2d 372; *Kelley v. Bonney*, 221 Conn. at 568–70, 606 A.2d 693.

3. If it is possible under Connecticut law to identify a non-government proceeding as quasi-judicial, then, in light of responses to the above questions, was the 2018 Yale University UWC proceeding at issue on this appeal properly recognized as quasi-judicial?

4. If the answer to Question 3 is "yes," would Connecticut extend absolute quasi-judicial immunity to defendant Jane Doe for her statements in that UWC proceeding?

5. If the answer to Question 3 is "no," would Connecticut afford defendant Jane Doe qualified immunity or no immunity at all?

*Khan v. Yale Univ.*, 27 F.4th at 833–34.

6

shielded at the pleading stage by either absolute or qualified immunity, we vacate the judgment of dismissal insofar as Khan's defamation and tortious interference claims are based on these statements.  Insofar as Khan's tortious interference claim is based on Doe's 2015 statements, we affirm based on timeliness.  In explaining these decisions, we assume familiarity with the facts and procedural history detailed in our certification opinion.

## DISCUSSION

## I.  Neither Absolute nor Qualified Immunity Warrants Dismissal of Khan's Claims Based on Doe's 2018 Statements at Yale's UWC Hearing

### A.  The Connecticut Supreme Court's Responses to Our Certified Questions

Our certified questions to the Connecticut Supreme Court sought guidance as to whether that state's law would afford Doe immunity—absolute or qualified—for claims based on her 2018 statements at Yale's UWC hearing.  *See supra* Note 4.  In certifying questions of state law to a state's highest court, we routinely afford that court considerable discretion in construing and responding to our questions.  Consistent with this practice, our certification opinion in this case states that "the Connecticut Supreme Court may modify or expand these certified questions or address any other issues of Connecticut law pertinent to this appeal."  *Khan v. Yale Univ.*, 27 F.4th at 834.  Thus, the Connecticut Supreme Court deemed it sufficient to answer only the second, third, and fifth of our questions, with some

modifications.  We agree that these responses suffice for us to decide this appeal.[5]

Before addressing our particular questions, the Connecticut Supreme Court identified two public policy interests informing all its responses.  It is useful to identify these at the outset.  The first policy is solicitous of sexual assault victims:

> [T]he public policy of this state, established through General Statutes § 10a-55m, demonstrates that sexual assault at institutions of higher education must be addressed by encouraging and supporting alleged victims of sexual assault to speak out, to vindicate their rights, and to bring the perpetrators to justice if the allegations are proven.  Likewise, the remedial powers of our judicial system must not be used as a means of intimidation to enable the perpetrators of sexual assault to silence their accusers by using the threat of civil litigation and liability for damages.

*Khan v. Yale Univ.*, 347 Conn. at 9 (footnote omitted).  The second policy seeks to ensure "fundamental fairness" to "those accused of crimes, especially as serious a crime as sexual assault."  *Id.*  The Connecticut Supreme Court explained as follows:

> Statements made in sexual misconduct disciplinary proceedings that are offered and accepted without

---

[5] The Court's negative response to our third question rendered the fourth question moot.  And, as the Connecticut Supreme Court observed, answering the first question directly is "unnecessary . . . to resolve whether Yale's UWC proceeding was quasi-judicial."  *Khan v. Yale Univ.*, 347 Conn. at 18–19.  Rather, that Court appears to have concluded that, even assuming an affirmative answer to our first question, *i.e.*, even if some non-governmental proceedings might be deemed quasi-judicial for purposes of affording absolute immunity to proceeding participants, no such conclusion obtains for the Yale UWC hearing here at issue.

8

adequate procedural safeguards carry too great a risk of unfair or unreliable outcomes. There is no benefit to society or the administration of fair and impartial disciplinary hearings in granting absolute immunity to those who make intentionally false and malicious accusations of sexual assault. Those accused of sexual assault in the higher education context often face life altering and stigmatizing consequences, including suspension or expulsion, criminal referrals, lack or revocation of employment offers, loss of future academic opportunity, and deportation. In the face of these consequences, we must acknowledge that the accused's right to fundamental fairness is no less important than the right of the accuser or the larger community to achieve justice. Disciplinary proceedings that lack fundamental procedural safeguards do not adequately protect a critical public policy undergirding the doctrine of absolute immunity—to encourage robust participation in judicial and quasi-judicial proceedings while providing some deterrent against malicious falsehoods.

*Id.* at 9–10 (footnote and internal quotation marks omitted).

### 1. The Second and Third Certified Questions

Striving "[t]o balance and protect both of the aforementioned interests," *id.* at 10, the Connecticut Supreme Court provided the following general response to our multi-layered second question.[6] A proceeding is quasi-judicial "only" when it satisfies four requirements: the proceeding (1) "is specifically authorized by law,"

---

[6] Our second question generally asked the Connecticut Supreme Court, "what requirements must be satisfied for a non-government proceeding to be recognized as quasi-judicial," before asking about a series of possible requirements. *See supra* Note 4.

(2) "applies law to fact in an adjudicatory manner," (3) "contains adequate procedural safeguards," and (4) "is supported by a public policy encouraging absolute immunity for proceeding participants." *Id.* The Court then proceeded to expand on these requirements and, in response to our third certified question, to rule as to whether the Yale UWC hearing at issue satisfied them.[7]

### a. The "Authorized by Law" Requirement

As to the threshold requirement that a quasi-judicial proceeding be "specifically authorized by law," the Connecticut Supreme Court explained that this requires the proceeding to be "governed by or conducted pursuant to a state or federal statute." *Id.* at 21. This requirement is consistent with the public purpose underlying absolute immunity, which "is intended to be a public benefit and a societal necessity," rather than an individual right. *Id.* at 22. The Court concluded that the Yale UWC hearing at issue "was specifically authorized" by Connecticut General Statutes § 10a-55m, which "requires each Connecticut institution of higher education to adopt policies regarding sexual assault," including "investigation and disciplinary proceedings" conducted according to "procedures and substantive requirements . . . governed by state law." *Id.* at 36–37.[8] Having found Yale's UWC hearing specifically authorized by

---

[7] *See supra* Note 4 (asking whether, in light of responses to our requirements question, "the 2018 Yale University UWC proceeding at issue on this appeal [was] properly recognized as quasi-judicial").

[8] *See Khan v. Yale Univ.*, 27 F.4th at 813–14 (taking judicial notice of § 10a-55m).

state law, the Court deemed it unnecessary to decide whether the hearing was also authorized by federal law.  *See id.* at 37 n.27.[9]

### b.    The "Application of Law to Fact in an Adjudicatory Manner" Requirement

The Connecticut Supreme Court then linked the first and second requirements, stating that "the entity conducting a quasi-judicial proceeding must apply public law—whether it be constitutional, statutory, administrative, municipal, or common law—to facts for the purpose of rendering an adjudicatory decision." *Id.* at 26.  An entity that "creates and applies only its internal policies lacks the necessary components of public participation and approval to be considered quasi-judicial for the purpose of affording participants absolute immunity."  *Id.*[10]

In applying this requirement to the Yale UWC hearing at issue, the Connecticut Supreme Court noted the parties' disagreement as to whether the hearing panel applied public law, or only university policies, in making its expulsion recommendation.  *See id.* at 38 n.28. It also expressed its own "doubts" as to the UWC panel's "power to apply law to fact" or to "function[] in an adjudicatory manner."  *Id.* (noting panel's authority to recommend sanction, but not to make final decision).  The Court found it unnecessary to pursue these matters, however, explaining that "even if" it were to find the second requirement satisfied, the Yale UWC hearing could not be deemed

---

[9] *See Khan v. Yale Univ.*, 27 F.4th at 812–13 & n.7, 822–23 & n.23 (outlining changing Title IX guidance in and around 2018 and discussing manner in which Title IX might authorize Yale UWC proceeding).

[10] This effectively answered our certified question 2.a. in the affirmative.  *See supra* Note 4 ("Must an entity apply controlling law, and not simply its own rules, to facts at issue in the proceeding [for the proceeding to be deemed quasi-judicial]?").

quasi-judicial because it lacked the "adequate procedural safeguards" demanded by the third requirement.  *Id.* at 38.

### c.    The "Procedural Safeguards" Requirement

The Connecticut Supreme Court devoted the longest part of its opinion to discussing the procedural-safeguards requirement for a quasi-judicial proceeding and to explaining why the Yale UWC hearing failed this requirement.[11]  Citing its recent decision in *Priore v. Haig*, 344 Conn. 636, 280 A.3d 402 (2022)—decided soon after our certification opinion—the Connecticut Supreme Court reiterated that for a proceeding to be recognized as quasi-judicial, "there must be sufficient procedural safeguards to ensure reliability and to promote fundamental fairness." *Khan v. Yale Univ.*, 347 Conn. at 27–30, 33.  The Court identified the following safeguards as significant to this purpose: (1) a requirement for declarants to make "statements under *oath* or otherwise certify that the information is true and correct," *id.* at 28 (emphasis added); (2) "the opportunity for parties to meaningfully challenge the veracity of participants' statements, whether through *cross-examination* or other comparable means," *id.* at 29 (emphasis added); (3) "*notice* to the accused," *id.* at 30 (emphasis added); (4) "the opportunity for parties to *call witnesses* or otherwise have them subpoenaed," *id.* at 31 (emphasis added); (5) "the

―――――――――――

[11] This responded to our certified question 2.d, *see supra* Note 4 ("How, if at all, do procedures usually associated with judicial proceedings—such as notice and the opportunity to be heard; the ability to be physically present throughout a proceeding; an oath requirement; the ability to call, examine, confront, and cross-examine witnesses; the ability to be represented by counsel—inform the identification of a proceeding as quasi-judicial?"), and to certified question 3, *see id.* (asking whether, in light of responses to our requirements question, "the 2018 Yale University UWC proceeding at issue on this appeal [was] properly recognized as quasi-judicial").

opportunity for *counsel* to be present and *meaningfully assist* their client during the proceeding," *id.* at 31–32 (emphases added); and (6) the "*right to appeal* the adjudicator's decision," which "requires that an *adequate record* of the proceeding be available," *id.* at 32–33 (emphases added). The Court did "not maintain that all of these procedural features are required for . . . recognition of a quasi-judicial proceeding"; rather, it held that "the collective absence of such features militates against a determination that the proceeding had adequate safeguards to ensure reliability and promote fundamental fairness" as necessary for a proceeding to be deemed quasi-judicial. *Id.* at 39.

Finding that Yale's UWC hearing lacked five of the six identified procedural safeguards—*i.e.,* all but notice—the Court concluded that the "proceeding . . . did not qualify as quasi-judicial for purposes of absolute immunity." *Id.* at 46.[12]

### (1)    Oath Requirement

With particular reference to an oath (or certification) requirement, the Connecticut Supreme Court stated that "it is important for any declarant receiving absolute immunity to make the statements under oath or otherwise certify that the information is true

---

[12] In reaching this conclusion, the Connecticut Supreme Court considered Khan's "complaint and all the documents appended to the complaint or incorporated in the complaint by reference, including the UWC procedures." *Khan v. Yale Univ.,* 347 Conn. at 38. Further, "in light of the procedural posture in which this case reache[d] [it]"—*i.e.,* on a motion to dismiss Khan's complaint—the Court acknowledged its "oblig[ation] to accept the factual allegations as true and to draw all inferences in Khan's favor." *Id.* This court similarly views the record on appeal. *See Khan v. Yale Univ.,* 27 F.4th at 810 (stating our obligation to accept as true facts drawn from Khan's complaint, documents incorporated therein, and materials subject to judicial notice, but evincing "no views" as to whether such facts are actually true (internal quotation marks omitted)).

and correct because, without doing so, there is no judicial remedy available to deter a witness from giving false information." *Id.* at 28 (citing *Priore v. Haig*, 344 Conn. at 655). The Court explained that "[b]ecause absolute immunity removes the threat of private defamation actions in order to incentivize witnesses to participate candidly and willingly in the proceeding, it is crucial that there be some strong deterrent, such as the threat of a perjury prosecution, against abuse of the privilege by the giving of untruthful testimony." *Id.* at 28–29.

The Court found the Yale UWC hearing at issue to have lacked such a deterrent. Yale's UWC procedures did not require hearing participants to "testify under oath, provide sworn statements, or certify to the truth of their statements." *Id.* at 39. Rather, the "only protection" against false statements in UWC proceedings was "the threat" of "a more severe [UWC] penalty or a referral for [university] discipline." *Id.* (internal quotation marks omitted). As the Court noted, Doe presumably could not have been subjected to such consequences because she had graduated from Yale by the time the UWC hearing took place. *See id.*[13] The Court concluded that "[t]he failure of the UWC to place Doe under oath or otherwise have her certify to the truth of her statements, subject to a penalty for untruthfulness, undermined the reliability of [her] statements," which, in turn, "significantly weaken[ed] Doe's contention that the UWC proceeding is quasi-judicial." *Id.* at 39–40.

---

[13] This court had raised similar concerns with respect to this aspect of the Yale UWC hearing. *See Khan v. Yale Univ.*, 27 F.4th at 823.

14

**(2)    Meaningful Cross-Examination**

The Connecticut Supreme Court similarly characterized "[t]he opportunity to meaningfully cross-examine adverse witnesses [a]s vitally important to the truth seeking function" and "necessary if a university's disciplinary proceeding is to be considered quasi-judicial." *Id.* at 41. *See generally id.* at 29 (observing that "[f]or two centuries, common-law judges and lawyers have regarded the opportunity of cross-examination as an essential safeguard of the accuracy and completeness of testimony" (brackets and citation omitted)). The Court explained that "[m]eaningful cross-examination allows for witness testimony to be challenged in real time, whether in person or through advanced video technology that allows for instant two-way communication and follow-up questions." *Id.* at 42. In so holding, the Court acknowledged that "[a]llowing for confrontation of an accuser while still preventing abusive questioning is no doubt a difficult balance to strike." *Id.* Nevertheless, it ruled that "fundamental fairness requires some measure of meaningful cross-examination" to deem a proceeding quasi-judicial. *Id.* at 42–43.

The Connecticut Supreme Court determined that Yale's UWC procedures did not afford Khan or his attorney an opportunity to engage in "live, real-time cross-examination of witnesses." *Id.* at 40. Instead, these procedures required that Khan and his attorney be excluded from the hearing room when Doe appeared (on video) and allowed them only "to submit questions," which the UWC panel could pose or not in its "sole discretion." *Id.* at 40, 42.[14] The Court held that such procedures "hampered Khan's ability to ask legitimate

---

[14] This court had also expressed concern with these aspects of Yale's UWC hearing. *See Khan v. Yale Univ.*, 27 F.4th at 823.

questions or to sequence questions in a way he believed would test the veracity of Doe's testimony at the hearing," and thereby "denied [him] a fundamental procedural protection essential to quasi-judicial proceedings." *Id.* at 42–43.

### (3)   Ability To Call Witnesses

Collecting precedent, the Connecticut Supreme Court stated that "the ability of the entity conducting the proceeding to subpoena witnesses, or procedures that allow parties to call their own witnesses to testify, are procedural safeguards common to quasi-judicial proceedings." *Id.* at 31 (citation omitted).  The Court noted that this "basic tenet of procedural fairness" found support in the Connecticut law authorizing Yale's sexual assault disciplinary proceedings. *Id.* at 43; *see id.* at 43–44 (quoting Connecticut General Statutes § 10a-55m(b)(6)(C)(ii) as requiring institutions of higher learning to adopt procedures that, among other things, clearly state that students responding to sexual assault report "*shall have the opportunity to present evidence and witnesses* on their behalf during any disciplinary proceeding" (emphasis added by the Connecticut Supreme Court)). Nevertheless, the Court determined that Yale's UWC procedures "did not provide the parties a reasonable opportunity to call witnesses." *Id.* at 43.  Insofar as these procedures "allowed parties to request that the UWC hearing panel call witnesses to testify, [they] provided no standards regarding whether the panel would in fact call or interview them." *Id.*  The Court concluded that by not allowing counsel to call witnesses and by affording the UWC hearing panel "sole discretion" to "reject witnesses recommended by Khan," Yale had "deprived Khan of a fair opportunity to present a defense," which did "not comport with the protections typical of quasi-judicial proceedings." *Id.* at 44 (internal quotation marks omitted).

### (4)     Assistance of Counsel

The Connecticut Supreme Court recognized "the opportunity for counsel to be present and meaningfully assist their client" during a proceeding as "an important safeguard that helps to identify" the proceeding as "quasi-judicial." *Id.* at 31–32; *see id.* at 45 (emphasizing importance of "active" assistance of counsel "during a quasi-judicial proceeding . . . to ensure the procedural and evidentiary fairness of a judicial proceeding"). The Court explained that the active assistance of counsel "serves to protect the parties from unfair or improper procedures and provides a means by which parties may effectively defend themselves." *Id.* at 32. The Court deemed such "active assistance . . . especially important" in settings like Yale's UWC hearing, where "the accused or accuser may lack experience with self-advocacy or representing his or her interests in an adversarial process that involves significant consequences for the individual parties." *Id.* at 45. Thus, it ruled that "[l]imitations on counsel's assistance" properly "bear on whether the proceeding is quasi-judicial." *Id.*

The Court found that Yale's UWC procedures "materially limited the assistance of counsel throughout the hearing" at issue. *Id.* at 44. While those procedures permitted Khan to be "accompanied by an adviser" at the UWC hearing—in this case, an attorney—they prohibited counsel "from speaking on Khan's behalf [at the hearing], objecting to evidence, examining Khan's accusers, and submitting documents to the UWC panel." *Id.* at 44–45 (internal quotation marks omitted).[15] The Court ruled that such "restrictions . . . on counsel's

---

[15] *See Khan v. Yale Univ.*, 27 F.4th at 823 (noting similar concerns with Yale's UWC hearing process).

participation in the proceeding support the conclusion that the proceeding was not quasi-judicial." *Id.* at 45.

### (5)  Adequate Record for Appeal

The Connecticut Supreme Court observed that "a party's right to a meaningful appeal, which requires an adequate record of the proceeding," is "an important procedural safeguard to ensure that facts were properly found and that law was appropriately applied." *Id*. at 33. Thus, in deciding "whether a proceeding is quasi-judicial in nature," a court properly considers the availability of both a right to appeal and a record adequate to the meaningful exercise of that right. *Id.*; *see id.* at 46 (stating that "maintenance of a transcript or record is critical and a key feature of any quasi-judicial proceeding").

When it did so here, the Connecticut Supreme Court concluded that Yale's UWC procedures "limited a party's ability to seek review of the UWC panel's decision because it failed to establish an adequate record of the proceedings." *Id.* at 45. While procedures require the UWC secretary to "keep minutes" of its meeting and "a record of all the actions and reports filed," those same procedures "explicitly provide that the minutes do not record statements, testimony, or questions." *Id.* (brackets and internal quotation marks omitted). Further, "[t]he UWC panel specifically denied Khan's request that it make a transcript or other electronic recording of the hearing for the purpose of further review." *Id.* at 45–46.[16] Thus, the Court concluded that "Khan's ability to appeal was severely constrained by the absence of any transcript or recording of statements, testimony, or questions raised during the UWC hearing." *Id.* at 46. Indeed, the Court found

---

[16] *See Khan v. Yale Univ.*, 27 F.4th at 816 n.13 (noting no transcript prepared as part of UWC hearing process).

the restriction "especially prejudicial" when considered together with counsel's inability to voice objections during the hearing. *Id.*

In sum, because the Yale UWC hearing at issue "lacked adequate procedural safeguards to ensure the reliability of the statements made," as would be employed at a judicial proceeding, the Connecticut Supreme Court ruled that the hearing "did not qualify as quasi-judicial for purposes of absolute immunity." *Id.*[17]

### d.    The *Kelley* Factors

Before discussing the final public-policy requirement for a quasi-judicial proceeding, the Connecticut Supreme Court provided a brief response to our certified question 2.b. about how factors enumerated in *Kelley v. Bonney*, 221 Conn. at 567, properly inform the identification of a proceeding as quasi-judicial.[18]  The Court held that the *Kelley* factors "are in addition to, not in lieu of" the identified

---

[17] While the Court's decision was grounded in state law, it noted that its procedural-safeguards requirement for a quasi-judicial proceeding was not unique to that law.  Rather, the requirement also found "support in the decisions of other courts." *Id.* at 46–48 (collecting cases).

[18] *See supra* Note 4 ("How, if at all, do the 'power' factors enumerated in *Kelley v. Bonney*, 221 Conn. at 567, 606 A.2d 693, and *Craig v. Stafford Construction, Inc.*, 271 Conn. at 85, 856 A.2d 372, apply to the identification of a non-government entity as quasi-judicial; and if they do apply, are these factors 'in addition' to, *id.*, or independent  of, a preliminary law-to-fact requirement?").  The *Kelley* factors ask whether the body conducting the proceedings at issue had the power to "(1) exercise judgment and discretion; (2) hear and determine or . . . ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." *Khan v. Yale Univ.*, 347 Conn. at 34 (footnote and internal quotation marks omitted) (summarizing *Kelley* factors).

19

requirements for a quasi-judicial proceeding. *Khan v. Yale Univ.*, 347 Conn. at 34. Thus, "a court should consider the *Kelley* factors but need not conclude that they are dispositive." *Id.* Because the factors did not play a role in the Connecticut Supreme Court's determination that the Yale UWC hearing at issue was not a quasi-judicial proceeding, we do not discuss them further.

### e. The "Public Policy" Requirement

As for its final requirement for a quasi-judicial proceeding affording absolute immunity, the Connecticut Supreme Court reiterated what it had recently said in *Priore*: "courts must always carefully scrutinize whether there is a sound public policy justification for the application of absolute immunity in any particular context." *Id.* at 35 (quoting *Priore v. Haig*, 344 Conn. at 653).[19] That task generally requires balancing "the public interest of encouraging public participation and candor, on the one hand, and the private interest of protecting individuals from false and malicious statements, on the other." *Id.* (quoting *Priore v. Haig*, 344 Conn. at 652). In doing so, however, a court must be mindful that absolute immunity is "strong medicine." *Id.* (quoting *Priore v. Haig*, 344 Conn. at 652). Thus, it is properly "reserved for those situations in which the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a speaker's motives." *Id.* (brackets omitted) (quoting *Priore v. Haig*, 344 Conn. at 663).

The Court did not pursue this point, however, because, as it further explained, public policy support is always necessary, but not

---

[19] This responded to our certified question 2.c. *See supra* Note 4 ("How, if at all, does public policy inform the identification of a non-government entity as quasi-judicial and, if it does, is this consideration in addition to, or independent of, a law-to-fact requirement and the enumerated *Kelley/Craig* factors?").

by itself sufficient, for identifying a proceeding as quasi-judicial so as to afford absolute immunity. In making this point, the Court stated:

> Even if an entity applies law to facts in a proceeding with adequate procedural safeguards, the proceeding is not quasi-judicial if there is no discernable public policy supporting absolute immunity for proceeding participants. Likewise, public policy alone will not justify affording absolute immunity to proceeding participants if the proceeding is devoid of the basic, fundamental procedural protections inherent in judicial and quasi-judicial proceedings. Rather, a proceeding is quasi-judicial if, in addition to satisfying the indicia of an official judicial proceeding [as reflected in the three requirements discussed earlier in the opinion] public policy favors providing absolute immunity for proceeding participants.

*Id.* at 35–36.

Thus, the Connecticut Supreme Court did not need to decide conclusively whether a sufficiently strong public policy supported affording absolute immunity to participants in Yale's UWC hearing because, in any event, and for reasons discussed *supra* at 12–19, the Court had held that hearing to fail the procedural-safeguards requirement for a quasi-judicial proceeding.

### 2. The Fifth Certified Question

In our fifth certified question, we asked the Connecticut Supreme Court whether, absent absolute immunity, Doe might be

afforded qualified immunity in this case.[20]   In response to this question—apparently one of first impression under Connecticut law—the Court held that qualified immunity could shield participants in university or college sexual misconduct hearings. Nevertheless, it concluded that Doe was not entitled to such a shield at the pleading stage of this action because Khan had satisfactorily pleaded malice.  *See id.* at 49–57.

In reaching that conclusion, the Court explained that "[u]nlike absolute immunity, which provides a blanket protection for a speaker's false statements, a qualified privilege protects only those allegedly defamatory statements that are not made maliciously."  *Id.* at 49.  In general, "a qualified privilege is appropriate when the legitimate public or private interest underlying the publication of the statements [at issue] outweighs the important reputational interests of the individual" about whom the statements are made.  *Id.* at 50; *see id.* at 52 (noting precedent providing "qualified privilege to individuals reporting crimes to the police").

In calibrating that balance here, the Court expanded on its earlier discussion of the competing interests of victim and accused in college and university sexual misconduct disciplinary proceedings. *See supra* at 8–9.  Specifically, the Court located in various Connecticut laws "a strong public commitment" to encouraging "victims of sexual assault on college and university campuses . . . to report claims of sexual violence."  *Id.* at 54 (citing provisions of Connecticut law).  It observed that the "fear of retaliation" that made some victims hesitant to report sexual assaults "would undoubtedly be compounded if

---

[20] *See supra* Note 4 (asking, if the Yale UWC hearing at issue was not a quasi-judicial proceeding, "would Connecticut afford defendant Jane Doe qualified immunity or no immunity at all?").

victims had to worry that any report they made could also be the subject of a defamation suit." *Id.* at 52. Thus, the Court concluded that qualified immunity was well suited to this context because at the same time that it "encourages victims of sexual assault to speak candidly with university officials and to report abuse by immunizing their good-faith reports," it provides plaintiffs accused of such assaults "with an opportunity to overcome the privilege" by showing that "a report is made, not in good faith, but rather with malice." *Id.* at 54 (brackets and internal quotation marks omitted); *see id.* at 55 n.41 (explaining that "malice" required to overcome qualified privilege is either (1) "actual malice," which "requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard [for its truth]"; or (2) "malice in fact," which "is sufficiently shown by proof the statement was made with improper and unjustifiable motives" (brackets and internal quotation marks omitted)).

Having thus recognized the availability of qualified immunity to participants in university or college sexual misconduct hearings, the Connecticut Supreme Court concluded that Doe was not now entitled to dismissal of Khan's action on the basis of such immunity. Reiterating that the case was "[a]t the motion to dismiss stage," when a "court must accept the factual allegations in the complaint as true and must draw inferences in the plaintiff's favor," the Court concluded that Khan had sufficiently alleged the malice necessary to defeat the privilege by pleading "that Doe made false accusations [of

rape] for the sake of trying to expel Khan as part of a larger political movement and personal vendetta." *Id*. at 55–56.[21]

In sum, the Connecticut Supreme Court has responded to our certified questions by stating that, under Connecticut law, neither absolute nor qualified immunity at this time warrants dismissal of Khan's claims insofar as they are based on Doe's 2018 statements at the Yale UWC hearing at issue.

## B. Applying the Connecticut Supreme Court's Responses to this Appeal

### 1. Absolute Immunity

Upon receipt of the Connecticut Supreme Court's responses to our certified questions, this court afforded the parties the opportunity for supplemental briefing. In their submissions, Khan and Doe agree that the challenged judgment of dismissal should be vacated insofar as it afforded Doe absolute immunity for her 2018 statements at Yale's UWC hearing. *See* Appellant's Suppl. Ltr. Br. (July 14, 2023) 7; Appellee's Suppl. Ltr. Br. (July 18, 2023) 3–4. We agree that such vacatur and remand is compelled by the Connecticut Supreme Court's responses to our certified questions, which we have just detailed.

Accordingly, to the extent the district court—ruling without the benefit of the aforementioned guidance from the Connecticut

---

[21] *See, e.g.*, Compl. ¶¶ 112, 113, 115 (alleging that Doe and Khan had engaged in consensual sex on October 13, 2015, but that Doe, "[i]n an attempt to explain her failure to rendezvous with friends" that night, "fabricated a claim of 'rape,' a claim she was later encouraged to pursue and publicize to campus officials, police officers, and others," and that "[i]nspired by shame and rage, Ms. Doe persisted in her false and defamatory claims in an effort to obtain the expulsion of Mr. Khan from Yale, a vendetta at which she succeeded").

Supreme Court—found the Yale UWC hearing to be quasi-judicial and relied on absolute immunity to dismiss Khan's claims against Doe based on her 2018 hearing statements, we now vacate that dismissal.

## 2.    Qualified Immunity

Our fifth certified question raised the possibility of dismissal of Khan's 2018-based claims being affirmed on the ground of qualified, if not absolute, immunity.  *See supra* Note 4.  In response, the Connecticut Supreme Court ruled that the state's public policy supported qualified immunity for participants in university or college sexual assault disciplinary proceedings.  Nevertheless, it concluded that such immunity did not now support dismissal of Khan's claims against Doe for her 2018 hearing statements because Khan's complaint sufficiently pleads the malice necessary to defeat such immunity.  *See Khan v. Yale Univ.*, 346 Conn. at 54–57.

To the extent that conclusion implicates both state substantive and federal procedural law, we are bound by the Connecticut Supreme Court's ruling only as to the first.  *See generally Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").  Nevertheless, we need not here delineate a bright line between the substantive and the procedural because, like the Connecticut Supreme Court, we conclude that the allegations in Khan's complaint—when viewed in the light most favorable to him, as they must be at this stage of the litigation—suffice to plead the malice required to defeat qualified immunity at this stage of the proceedings.  *See supra* Note 21 (quoting complaint allegations); *Khan v. Yale Univ.*, 347 Conn. at 55 n.41 (defining "malice" for purposes of defeating qualified immunity).

25

To conclude, because neither absolute nor qualified immunity presently supports the dismissal of Khan's claims based on Doe's 2018 statements at the Yale UWC hearing at issue, we vacate that part of the challenged judgment and remand to the district court for further proceedings consistent with this opinion.

### C.    The Timeliness of Khan's Tortious Interference Claim

Khan alleges that Doe tortiously interfered with his business relationship with Yale—specifically, his "contract[] for . . . education," Compl. ¶ 118—by falsely accusing him of rape in 2015 and by repeating that accusation in 2018.  The 2015 statements were made orally to counselors at Yale's Women's Center and in a formal written complaint to the university.  As a result, Yale officials immediately suspended Khan and barred him from campus, which actions, he submits, left him homeless.  The 2018 statements were made at Yale's UWC hearing, which led to Khan's expulsion from the university.[22]

The district court, having ruled that absolute quasi-judicial immunity shields Doe from any claims based on her 2018 hearing statements, further concluded that insofar as that left Khan with a tortious interference claim based only on Doe's 2015 statements, that claim had to be dismissed as untimely.  *See Khan v. Yale Univ.*, 511 F. Supp. 3d at 228.[23]    As a result, the district court found it

---

[22] Khan argues that his expulsion resulted from "almost four years of persistent false testimony" by Doe.  Appellant's Br. 21.  He does not dispute, however, that absolute immunity shields Doe for testimony given at Khan's criminal trial.  *See Khan v. Yale Univ.*, 27 F.4th at 811 n.4.  Thus, we understand his claims here to be based only on Doe's 2015 and 2018 statements to Yale personnel.

[23] In so ruling, the district court determined that Khan's action commenced on January 24, 2020, the date on which Doe was deemed served by virtue of Khan's filing of Doe's executed waiver of service.  *See Khan v. Yale Univ.*, 511 F. Supp. 3d

unnecessary to address Khan's argument that, at least with respect to his tortious interference claim, Doe's 2015 and 2018 statements were part of a timely continuing course of conduct.  *See id.* at 228 n.15.

Our vacatur of the dismissal of Khan's 2018-based claims now requires consideration of his continuing course of conduct argument in order to determine whether his tortious interference claim is limited to injuries caused by Doe's 2018 statements or extends back to her 2015 statements.  It is not necessary to remand for this purpose because the law is established and the pertinent dates undisputed.  Thus, we can ourselves conclude that the continuing course of conduct doctrine does not apply in the circumstances of this case.  On that ground, we affirm the dismissal of so much of Khan's tortious interference claim as is based on Doe's 2015 statements.  *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) (holding that appeals court "may affirm on any ground with support in the record, including grounds on which the district court did not rely" (internal quotation marks and citation omitted)).  This does not mean that Doe's 2015 statements cannot be admitted as relevant background evidence to Khan's timely 2018-based claims.  It means only that Khan cannot recover damages for injuries attributable only to Doe's 2015 statements, specifically, his 2015 suspension from Yale.  *See generally*

---

at 226–27 & n.14 (citing Fed. R. Civ. P. 4(d)(4)).  Thus, it concluded that any claims accruing before January 24, 2017, were presumptively time barred by Connecticut General Statutes § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *see Essex Ins. Co. v. William Kramer & Assocs., LLC,* 331 Conn. 493, 503, 205 A.3d 534 (2019) (holding that § 52-577 runs from date of tort not date injury discovered); *Barrett v. Montesano*, 269 Conn. 787, 794, 849 A.2d 839 (2004) (instructing that, while § 52-577 is frequently referred to as a "statute of limitations," it "technically function[s] more like [a] statute[] of repose").  The parties do not dispute these calculations on appeal.

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding, in employment discrimination suit, that employee is not barred from using acts outside limitations period "as background evidence in support of a timely claim").

To explain our conclusion, we rely on Connecticut law pertaining to the continuing course of conduct doctrine. That law states that, "[w]hen the wrong sued upon consists of a continuing course of conduct," the relevant statute of limitations or repose "does not begin to run until that course of conduct is completed." *Flannery v. Singer Asset Fin. Co.*, 312 Conn. 286, 311, 94 A.3d 553 (2014) (internal quotation marks omitted). The doctrine is "generally applicable under circumstances where it may be impossible to pinpoint the exact date of a [tortious] act or omission that caused injury or where the [tort] consists of a series of acts or omissions and it is [therefore] appropriate to allow the course of action to terminate before allowing the repose section of the limitation period to run." *Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 503, 205 A.3d 534 (2019) (brackets and internal quotation marks omitted); *see also Martinelli v. Fusi*, 290 Conn. 347, 356, 963 A.2d 640 (2009) (stating that "continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied"). To invoke the doctrine, a plaintiff must allege that the defendant, "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Flannery v. Singer Asset Fin. Co.*, 312 Conn. at 313 (internal quotation marks omitted). To demonstrate that the defendant owed the plaintiff a continuing duty, the plaintiff may plead "*either* a special relationship between the parties giving rise to such a continuing duty *or* some later wrongful

28

conduct of a defendant related to the prior act." *Essex Ins. Co. v. William Kramer & Assocs., Inc.*, 331 Conn. at 504 (emphases in original) (internal quotation marks omitted).

Here, Khan does not attempt to plead a special relationship with Doe. Rather, he urges that Doe's 2018 hearing statements constituted "later wrongful conduct" that sufficiently related to Doe's 2015 statements (*i.e.,* the "initial wrong") for the two events to constitute a continuing course of conduct. Appellant's Br. 20–21. We agree that Doe's 2015 statements "relate" to her 2018 statements insofar as the latter repeat the former's accusations of rape, and insofar as the 2015 formal complaint was the predicate for the 2018 UWC hearing. We nevertheless conclude that the statements do not manifest the sort of continuing course of conduct for which Connecticut's statute of repose should not begin to run until the last act concludes.

*First,* far from being impossible to date, Doe's allegedly tortious acts are dated in Khan's own complaint at least as to month and year (early November 2015 and November 2018, respectively) and, with discovery, can likely be pinpointed given that the 2015 complaint was documented and the 2018 statements were made at a Yale UWC hearing before five identified UWC members.

*Second,* the statements do not reflect a series of continuing acts affecting his status at Yale but rather two acts separated by three years: Doe's initial 2015 accusation, documented in a formal complaint; and her 2018 repetition of that accusation at the UWC hearing. The significant temporal distance, moreover, is attributable, at least in part, to Khan, who—while under suspension by Yale—sought and obtained a stay of Yale's disciplinary proceedings pending the conclusion of his criminal case. *See Khan v. Yale Univ.*, 27

29

F.4th at 811.[24]  In these circumstances, Khan cannot claim that "it would be inequitable for the limitations period to begin to run" because he was "incapable of bringing [a tortious interference] action because he [was] under the control of [Doe] and . . . thus unable to bring an action." *Watts v. Chittenden*, 301 Conn. 575, 591, 22 A.3d 1214 (2011).

*Third,* Doe's 2015 and 2018 statements caused distinct injuries. Khan pleads that Doe's 2015 complaint caused his immediate suspension from Yale, while her 2018 hearing statements resulted in his expulsion.  Moreover, the 2015 suspension was lifted in the fall of 2018, months before Doe's hearing statements.  Insofar as Khan was re-suspended in October 2018, that was triggered by a *Yale Daily News* article reporting events not involving Doe.  Nothing in these circumstances supports tolling the time for Khan to complain of tortious interference in November 2015 until November 2018.  Not only was Khan immediately aware of the suspension injury in November 2015, but also there was no sound reason for him to have delayed pursuing that claim pending the outcome of the 2018 UWC hearing.  A favorable decision at that hearing would not have remedied or even mitigated the suspension injury, which Khan had sustained fully by the fall of 2018.  And the unfavorable decision actually reached at the hearing did not aggravate the completed suspension but, rather, imposed the additional injury of expulsion. On remand, Khan can seek full compensation for the latter injury by pursuing his timely tortious interference claim based on Doe's 2018 hearing statements.

---

[24] As noted in our certification opinion, Yale's Sexual Misconduct Policy then in effect stated that UWC proceedings should not be stayed in such circumstances. *See Khan v. Yale Univ.*, 27 F.4th at 811 n.3.

Thus, while Khan characterizes Doe's actions as an ongoing "crusade," Compl. ¶ 119, his pleadings fail plausibly to demonstrate a continuing course of cognizable wrongful conduct by Doe as necessary to plead a timely claim of tortious interference dating back to 2015. *See generally Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) ("When a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible).").

Accordingly, at the same time that we vacate the dismissal of Khan's tortious interference claim based on Doe's 2018 statements because those statements are presently not shielded by absolute or qualified immunity, we affirm dismissal of Khan's tortious inference claim based on Doe's 2015 statements as untimely.

## CONCLUSION

To summarize,

1.  In light of the Connecticut Supreme Court's responses to our certified questions in this case, *see Khan v. Yale University*, 347 Conn. 1, 295 A.3d 855 (2023), we conclude that Khan's state-law claims against Doe for defamation and tortious interference with contract should not have been dismissed insofar as they are based on Doe's 2018 statements at a Yale UWC hearing because,

    a.  that hearing lacked the procedural safeguards necessary to qualify as a quasi-judicial proceeding and, therefore, Doe is not shielded by absolute immunity for her hearing statements; and

    b.  although qualified immunity is available to participants in university and college sexual

31

assault proceedings, Khan's complaint sufficiently pleads the malice required to defeat such immunity at this stage of the case.

2.  Insofar as Khan bases his tortious interference claim on Doe's 2015 statements, the claim was properly dismissed as untimely because it falls outside the relevant three-year statute of repose and Khan fails adequately to plead a continuing course of conduct by Doe that would toll that statute through the time of her 2018 statements.

Accordingly, we **AFFIRM IN PART** so much of the partial judgment as dismissed as untimely Khan's tortious interference claim based on Doe's 2015 statements; we **VACATE IN PART** so much of the partial judgment as dismissed on absolute immunity grounds Khan's defamation and tortious interference claims based on Doe's 2018 statements; and we **REMAND** the case for further proceedings consistent with this opinion.

32